JACKSON, *ex dem.* J. S. & W. BROWN, *against* BETTS. (*a*)

EJECTMENT for lands in the town of *Brunswick, Rensselaer* county, on a joint and several demise, from all and each of the three lessors ; tried at the *Rensselaer* circuit, *July 9th*, 1824, before BETTS, C. Judge.

On the trial, the lessors claimed as devisees, not as heirs of *Benajah Brown*, deceased ; and the defendant admitted that the lessors were the children of *Benajah Brown*, who died seised of the premises in question, in *May*, 1822.

The plaintiff then called *James Mallory*, who swore that on the 9*th* day of *November*, 1816 he received from *Benajah Brown*, his will, to keep for him, &c.

In ejectment, the plaintiff claimed under a will which could not be found. He proved that the testator made a will, several years before his death; and deposited it with M. for safe keeping. The testator afterwards took it back, for the avowed purpose of

adding a codicil ; which he did about the 7th of *July*, 1821. On the 1st day of *March*, 1822, his daughter saw a paper in his desk drawer, which she had no doubt was his will. Between that day, and his going a journey to visit his son, which was in the *April*, next following, she saw him take some papers from the desk, and burn them ; but did not know and could not say they resembled the will. She saw him also several times engaged at the desk in arranging his papers, a bundle of which he placed in his trunk. She perused the paper but partially and hastily, &c. She was, however, satisfied that it was her father's will, and stated several circumstances calculated to identify it with the will and codicil proved to have been executed ; and she stated other circumstances which had a contrary tendency. The testator died in *May*, 1822. The judge, at the trial, deeming it necessary to shew the existence of the will subsequent to the execution of the codicil ; and that this was not satisfactorily done by the daughter's testimony, nonsuited the plaintiff.

*Held*, (without deciding whether the judge was correct in holding it necessary to shew the existence of the will at any time after adding the codicil,) that there was sufficient evidence upon this point to go to the jury ; and that it should have been submitted to them, as well upon this question, as that of revocation ; that the plaintiff, therefore, should not have been nonsuited.

The declarations of a testator, as to the existence of his will, and the place where it may be found, are inadmissible in evidence, though made *in articulo mortis*.

A party in a cause, (e. g. a lessor in ejectment,) is admissible as a witness, to shew the loss of a will under which he claims, in order to let in secondary evidence of its contents.

If a subscribing witness to a will, shew it duly executed, though he has forgotten who one of the witnesses was, this is sufficient proof of the execution.

Diligent search for a will at the last place of abode of a testator, in a desk where he usually kept his papers, and failure to find his will there, *held*, a sufficient ground for letting in parol proof of its contents, though he died abroad.

(*a*) This cause was decided in *May* term last.

The plaintiff having given notice to the defendant, to produce the will and codicil of *Benajah Brown*, which he did not do, next proceeded to the proof of their loss. For this purpose, *J. Brown*, one of the lessors, was sworn; and testified, that about a week after *Benajah Brown's* decease, he went to his house in *Brunswick*, where he had last, and for many years resided, to obtain possession of the will. That the witness made search for it, in the desk where his father said he had left it; but could not find it. He found the key of the desk. It was locked; but in such a situation that it could be opened with other keys. His father died at the witness' house in *Poundridge, Westchester* county, about 130 miles from *Brunswick*. *Nancy Ayres*, a daughter of *Benajah Brown*, was then sworn as a witness for the plaintiff; and testified that she lived with her father, when he went from *Brunswick* to *Poundridge*, which was in *April*, 1822. On the 1*st* day of the next preceding *March*, she saw an article in a small drawer in the desk of her father, at his house in *Brunswick*, purporting to be his will; and had no doubt it was his will; read enough of it to see how the daughters were provided for. After that, and a few days before he went from home, she saw him take some papers out of the desk and burn them; but did not know, and could not say they resembled the will. She never examined the desk afterwards. Intermediate her seeing the will and his going away, she saw him several times engaged arranging his papers at that desk; whence he took a considerable bundle of papers, and put into his trunk. Mr. *Mallory*, called again, swore that he was one of the subscribing witnesses to the will, and *Wm. L. Marcy*, Esq. was another. Mr. *Mallory* swore to the due execution of the will; but could not remember who was the third witness. That some years after the will was executed, the deceased called for, and took it, stating that he was going to his son *James'*; and was about to make some alterations, or make a codicil to his will. The will was written on one sheet of letter paper: and the witness thought it was not slit.

The plaintiff then offered parol evidence of the contents of the will. This was objected to, because sufficient proof had not been given of its existence at the time of the testator's death. The judge said his opinion was, that if the will had been destroyed before the testator's death, though without his knowledge, it was not a valid will. But, on this point, the verdict had better be taken subject to the opinion of the court. That he thought the testimony too slight to repel the presumption that the testator destroyed the will. But for the purpose of bringing the whole matter in dispute before the supreme court, he would receive the testimony subject to the opinion of that court. The defendant then objected to the proposed testimony, on the ground that the execution of the will was not sufficiently proved, till the names of all three of the subscribing witnesses should be disclosed.

*Ezra Lockwood* was then called, who testified, that about the 7th of *July*, 1821, the deceased brought to the witness' dwelling house in *Poundridge*, a paper purporting to be his last will, on one sheet of letter paper, not slit or cut open, witnessed by Mr. *Mallory*, Mr. *Marcy*, and another whose name he did not recollect; and requested the witness to write and add a codicil, which he did; and his impression was, that it was attached to the will by a seal. The codicil was properly attested to pass real estate. The witness then sealed up the will and codicil, and gave them back to the deceased. The codicil altered the will merely by placing some of the devisees under the care of a trustee. *Nancy Ayres*, again called, did not recollect there was more than one paper; saw the seal of the wrapper was broken open; opened it, and saw the will; there might have been an article attached to it; presumed there was more than one sheet of the will; but whether it was attached together, she could not say. *James Brown* was named executor. She did not read the will through. Mr. *Marcy* swore to substantially the same facts as Mr. *Mallory*. The former drew the will. Mr. *Lockwood*, called again, said he thought the codicil was written on one page

Jackson
v.
Betts.

of half a sheet; and it was his impression that it was written to read by turning over the leaf.

The plaintiff then offered an authenticated record of the will of the deceased, exemplified under the seal of the surrogate of *Rensselaer* county. The judge rejected the evidence.

*Nancy Ayres,* called again, stated that there was no whole sheet of paper of the will. The paper was held, or attached together at the top by something. Did not know how far she read the paper; and had no recollection that she turned over and examined the second page; believed she examined it carelessly; and looked it through; but has no recollection that she did. If her father's name was to the paper, she probably saw it; but has no recollection that she did. She might have had it in her hand a minute; but did not know; thought there was written on the cover, "The last will and testament of *Benajah Brown.*" Did not know how many folds or pieces of paper the will consisted of.

The judge then ruled, that the testimony failed to show satisfactorily, that the paper seen by Mrs. *Ayres, March 1st,* 1822, was the will spoken of by Messrs. *Mallory, Marcy,* and *Lockwood;* and that if proof of the codicil was to be considered proof of the execution of the will; yet the plaintiff could not be permitted to show the contents of the latter, without first giving evidence of its existence, after it was delivered by Mr. *Lockwood* to the deceased in *July,* 1821.

The plaintiff then offered to prove the declarations of the deceased, made on the day he was taken ill, before his last sickness, that in *April,* 1822, when he left his house in *Brunswick,* he left his will and codicil mentioned by Mr. *Lockwood* in the drawer mentioned by Mrs. *Ayres.* That in *April,* 1822, he applied to Mr. *Lockwood* to write another codicil, of the description mentioned by Mr. *Lockwood.* That the deceased repeatedly declared, during his last illness, and *in articulo mortis,* to *Brown,* the executor, that he had left his will and codicil

in his desk at *Brunswick ;* and stated where the key was left.

This evidence being objected to, was overruled by the judge, who directed a nonsuit to be entered ; the plaintiff having no farther evidence.

*J. P. Cushman,* for the plaintiff, moved to set aside the nonsuit, and for a new trial. He said the execution of the will was sufficiently proved ; and there is no sufficient evidence of its revocation. (*Dan* v. *Brown,* 4 *Cowen,* 490. 4 *Burr.* 2514.) *James Brown* was a competent witness to prove the loss ; and this was sufficiently established by his testimony. (4 *Cowen,* 491.) Search was made in the place where the will was, most probably, to be found ; (*Jackson* v. *Hasbrouck,* 12 *John.* 192 ;) and whether a bundle of papers was, or was not in the trunk at *some time,* cannot be material. If reasonable diligence be shown, it is enough. (*id.*) The judge erred in excluding proof of the contents of the will. It was not necessary to prove, that it had been seen after it was handed by *Lockwood* to the testator. (*Dan* v. *Brown,* 4 *Cowen,* 490.) But if otherwise, it should have been put to the jury to judge of the weight of Mrs. *Ayres'* evidence, as to the identity of the paper she examined. It was a question of fact. The judge also erred in requiring proof of the third witness. (*id.*)

*J. Paine,* contra. The evidence shows that the deceased destroyed his will, if he ever made one. But if otherwise, the search proved was not sufficient to warrant a presumption of loss. Search should have been made in the testator's trunk, as well as in his desk. The declarations of the deceased were properly excluded. (*Dan* v. *Brown,* 4 *Cowen,* 490.) Notice to the defendant to produce the will and codicil could have no effect. There was no evidence that he ever had them in his possession. The exemplification from the surrogate's office, was properly rejected. (1 *Phil. Ev.* 433, 1 *Am. ed.*) The plaintiff was not prejudiced by the decision, that the third wit-

Jackson
v.
Betts.

ness must be disclosed. That defect was afterwards supplied; the decision went for nothing, therefore; and can be no reason for setting aside the nonsuit. (3 *John. Rep.* 528. 10 *id.* 447.) The mere facts that the testator made a will, which could not be found after his death, are not sufficient to establish it. The legal inference is, that the testator destroyed it himself.

*Curia, per* SUTHERLAND, J. The judge nonsuited the plaintiff, on the ground that there was not sufficient evidence of the identy of the will drawn by *Marcy* in 1816, and proved by him and *Mallary* and *Lockwood*, and that seen by Mrs. *Ayres* in the desk of the testator, in *March*, 1822: that parol evidence of the contents of the will drawn by *Marcy*, could not be received; inasmuch as there was no evidence of its existence subsequent to *July*, 1821, when *Lockwood* drew a codicil for the testator, which, after it was duly executed, was attached to the will, and both delivered by him to the testator.

There certainly was evidence enough upon this point to go to the jury; and I think the learned judge erred in not submitting it to their determination. It was a question of fact, which it was their peculiar province to decide.

Whether the will of the testator was among the papers which Mrs. *Ayres* testified that her father burned in *March*, 1822, before he went to *Westchester*, should also, I think, have been submitted to the jury. The evidence upon that point, is of such a character, that we should not disturb any conclusion to which the jury might have come.

The declarations of the testator during his last sickness, as to the existence of his will, and the place where it would be found, were incompetent evidence, and were properly rejected by the judge. This point was decided in *Dan* v. *Brown*, (4 *Cowen*, 490,) in relation to this very will. (*And vid.* 3 *Barnw. & Alders.* 489. 2 *John.* 31. 2 *Phil. Ev.* 197, *and the cases there cited.*)

It was also decided in *Dan* v. *Brown*, that it was not essential to the due proof of the will, that the name of the third witness should be ascertained; the fact that it was attested by three witnesses, having been established.

Assuming the execution of the will, and its existence at the time of the testator's death, to have been established ; the evidence of its subsequent loss, or destruction, was sufficient to let in parol proof of its contents. Diligent search was shown to have been made, where it was most likely to be found ; in the desk of the testator, where he kept his papers, at his usual place of residence. This was *prima facie* sufficient. (4 *Cowen*, 491. 12 *John.* 192.)

On these grounds, a new trial must be granted, with costs to abide the event.