IN THE MATTER OF THE PROBATE OF THE LAST WILL OF MANDAME MARSH, DECEASED.

*Lost or destroyed will — admissibility, in an action to establish it, of declarations of the testator that he had a will.*

In this proceeding, instituted in a Surrogate's Court to establish and prove a will which it was claimed had been made by the testatrix, but could not be found after her death, it appeared that a will had been duly executed and published by the testatrix, and that she had taken the same into her own custody, and it did not appear that it was thereafter seen by any other person prior to her death. Upon the trial evidence of the declarations of the testatrix, made from time to time and up to a short time prior to her death, to the effect that she had a will, and that by it she had given her property to her granddaughter Ruth, were received against the objection and exception of the contestant.

*Held*, that the evidence was competent.

The cases bearing upon the admissibility of such declarations in this and other States, collated and examined by BRADLEY, J., and the opinion expressed that so far as the existence of a will shown to have been duly executed may depend upon the intent of the testator without the aid of any act, his declarations may be competent as some evidence of his intent as of the time they are made, but that such evidence should be carefully scrutinized and cautiously weighed.

APPEAL from a decree of the Surrogate's Court of Chautauqua county, declaring established and admitting to probate the last will of Mandame Marsh, deceased.

*John B. Wicks*, for the contestant, appellant.

*A. C. Wade*, for the proponent, respondent.

BRADLEY, J. :

The testatrix made her will in the fall of 1873, by which she devised and bequeathed all her property to Ruth Marsh, her grand-daughter, and died November 26, 1884, at her house in Jamestown, where she had for many years resided. After her death, search was made for her will and it was not found. This proceeding was instituted in the Surrogate's Court upon the petition of Ruth, the legatee, to establish and prove the will pursuant to the statute. (Code Civil Pro., § 2621.) The will was duly executed and published, and the testatrix took it into her custody; and it does not appear that thereafter, prior to her death, it was seen by any other person. The fact that no will was found after her death raises the presumption that it was destroyed by her *animo revocandi*, and it could not be proved as a lost or destroyed will unless shown to have been in existence at the death of the testatrix, or to have been fraudulently destroyed in her lifetime. (2 R. S., 68, § 67; Code, § 1865; *Betts* v. *Jackson*, 6 Wend., 173; *Idley* v. *Bowen*, 11 id., 236; *Knapp* v. *Knapp*, 10 N. Y., 276.) There is evidence tending to prove that the relations between her and her son, Albert Marsh, who is the father of Ruth, had not been agreeable for some years dating back of the execution of the will, and that he was not in the habit of visiting her, although they resided in the same town, and that his relations with his daughter Ruth were not pleasant, and they had not spoken together for two or three years prior to the death of the testatrix; that a close friendly relation had existed between her and Ruth, who, at the time of such death, was seventeen years of age and had been married about two years, and during that time the testatrix had been residing in her house alone; that the day before her death she was found insensible, and remained so until she died, and communicated with no one during that time; that immediately after her death her son gathered up

the papers and some other things about the house, and carried them away, and for that purpose the evidence permits the conclusion that he diligently searched for her papers in the drawers, boxes and other places where she did or was likely to keep them. And there is evidence to the effect that he inquired and ascertained that his mother had made a will, and that he said that if he found it he should destroy it, and if he did not find it should contest it. He denies that he made this last statement. But the evidence authorized the conclusion of the trial court that he did express such purpose, and, to consummate it, made a search for the will, and if the evidence permitted the court to find that the testatrix did leave a will at the time of her death, the further inference was justified that it was taken by the son from the house and by him suppressed or destroyed. The son Albert filed objections to the proof of the will, and alleged that the testatrix died intestate, and appeared as contestant in the proceedings, and took this appeal from the decree of the Surrogate's Court. But it does not appear by the record before us that any findings of fact or conclusions of law were made by the surrogate, or that any exceptions were taken to any such findings either of fact or law. So that no question upon the merits seems to be presented here for consideration, in the manner required to permit any review in that respect. (Code Civil Pro., § 2545; *Angevine* v. *Jackson*, 103 N. Y., 470.) It is, therefore, unnecessary to further consider the evidence and its sufficiency in reference to the facts requisite to the establishment and probate of a will in such cases. But a question arises upon exceptions taken to the admission of evidence of the declarations of the testatrix made from time to time and up to a short time prior to her death, to the effect that she had a will and by it had given her property to Ruth. This evidence was evidently given as bearing upon her intention as of the time they were made and to repel the presumption that she had during her life revoked the will (which it appeared she had made) and as tending to prove that it was in her possession up to the time of her death. The cases in this State and elsewhere are not entirely in harmony on this question. In *Dan* v. *Brown* (4 Cow., 483), which was a proceeding for the partition of land, evidence of this character was received without objection, but on review WOODWORTH, J., remarked that he did not lay any " stress

upon the declarations of the testator. They were made long after the execution of the will and shortly before his death. They are not evidence unless they relate to the *res gestœ* or to an act done." In *Jackson* v. *Betts* (6 Cow., 377), which was an action of ejectment involving the consideration of the same will, the declarations referred to of the testator were rejected and the plaintiff nonsuited, and although a new trial was granted on review, on the ground that the evidence was sufficient to go to the jury, SUTHERLAND, J., said : " The declarations of the testator during his last sickness as to the existence of his will and the place where it would be found were incompetent evidence and were properly rejected by the judge. This point was decided in *Dan* v. *Brown* (4 Cow., 490), in relation to this very will." The case of *Jackson* v *Betts*, after another trial, came up for review again (9 Cow., 208), in which the question now under consideration was not presented, but the case went off on the ground that no presumption of revocation by the testator of a will which he had made, arose from the mere fact that it was not found after his death. The Court of Errors on review (6 Wendell, 173), held to the contrary and reversed the court below. The chancellor, however, in referring to the decision of the court (reported in 6 Cow. R.), that evidence of the declarations of the testator was not admissible, remarked that there was sufficient doubt as to the correctness of the decision of the Supreme Court on that point to authorize them to direct a reargument of the question if it should again come there.

In *Knapp* v. *Knapp* (10 N. Y., 276) evidence of the declarations of the testator, made awhile before his death, that he had made a will and it was in his desk, was received without objection. The views of the court in the cases cited, so far as they express any determination, are against the admissibility of evidence of such declarations. But it may be observed that in the case where that decision was announced, the determination of the question was not necessary to the result given, as the view of the trial court was in that respect approved on review, and a new trial was granted for the reason before mentioned. (6 Cow., 377.) But in *Waterman* v. *Whitney* (11 N. Y., 157) after referring to the cases of *Dan* v. *Brown* and *Jackson* v. *Betts*, SELDEN, J., in delivering the opinion, adds : " I consider these cases as establishing the doctrine that upon

a question of revocation no declarations of the testator are admissible except such as accompany the act by which the will is revoked, such declarations being received as a part of the *res gestœ*, and for the purpose of showing the intent of the act." That case has since been treated in this State as declaring the correct and governing rule on this subject. (*Sisson* v. *Conger*, 1 T. & C., 564; *Cudney* v. *Cudney*, 68 N. Y., 148; *Eighmy* v. *People*, 79 id., 546, 558; *Mark* v. *McGlynn*, 88 id., 374; *Sanford* v. *Ellithorp*, 95 N. Y., 54.) The doctrine of the Waterman case is that the declarations of the testator are not competent evidence in support of revocation of a will unless they accompany some act in that respect, but are competent as bearing upon his mental condition as of the time of making his will, when pertinent for that purpose. And such was the view of the court in *Jackson* v. *Kniffen* (2 Johns., 31).

There is no question in this case about the sound and disposing condition of the mind of the testatrix at the time she made her will, and no circumstances appearing to give competency to her declarations for any other purpose than as tending to repel the presumption of revocation of her will. And the Waterman case is distinguished from this one in the fact only, that such evidence there was sought to be used to prove the act of revocation, while in the case at bar such declarations were given in evidence to prove no act by way or revocation or otherwise, but to show that she then had no intention to revoke her will. The question whether the distinction is substantial and may be observed in support of the ruling of the court below may be one of some doubt and difficulty Our attention is called to cases decided in England and in this country in support of the admissibility of evidence of such character. In *Whiteley* v. *King* (17 C. B. [N. S.], 756), it was held that declarations like those in question of a testator were competent and cogent evidence on the question of his intention in that respect, when his will was not found or produced after his death, and against the presumption of revocation arising from its non-production. And in *Sugden* v. *Lord St. Leonards* (1 L. R. P. D., 154; S. C., 17 Moak, 453) it was held that the declarations of a testator, made both before and after the execution of his will, are, in the event of its loss, admissible as secondary evidence of its contents; and there the proposition is repeated that the declarations of a testator, are admitted

" to show the continuing existence of the will at the time they were made, and so rebut the presumption of the will having been destroyed *animo revocandi*."

*In the Matter of Johnson's Will* (40 Conn., 587) it was held that the declarations of the testator, to the effect that he was leaving a will, were admissible for the purpose of showing that he had not revoked his will, which was not found after his death. In *Foster's Appeal* (87 Penn. St., 67) evidence of like character was received and considered upon the question, and to repel the presumption of revocation. And see, to the same effect, *Steele* v. *Price* (5 B. Monroe, 58). The evidence of this character involves no act other than that of continued possession by the testator of his will. And it may be somewhat difficult to so apply the principles upon which the general rules of evidence are established as to demonstrate the admissibility of the declarations in question, unless the custody of the will by him from the time of its execution may be treated as included within the *res gestæ*, and such evidence admissible as characterizing the possession and competent on the question of intent, and not as bearing upon any act, testamentary or otherwise, of the testator (*Keen* v. *Keen*, L. R., 3 P. & D., 105; S. C., 7 Moak, 341; *Collagan* v. *Burns*, 57 Me., 449; *Patterson* v. *Hickey*, 32 Geo., 156; Schouler on Wills, § 403.)

In this fact is found the distinction between the evidence of declarations like those in question, and of declarations to the effect that the testator had revoked his will, because in the latter the act creates and constitutes the *res gestæ*, and intent is ineffectual to produce that result, while in the former intent is sufficient to preserve the will, and if valid render it effectual after his death. The proof of lost wills rests in secondary evidence, and we are inclined to think that so far as the existence of a will, shown to have been duly executed, may depend upon the intent of the testator without the aid of any act, his declarations may be competent as some evidence of his intent as of the time they are made, but that such evidence should be carefully scrutinized and cautiously weighed. (*Grant* v. *Grant*, 1 Sandf. Ch., 237.) While this proposition does not, so far as we have been able to discover, have the support of any adjudication in this State, we find no case where the contrary of it has necessarily been decided upon review. With some hesita-

tion the conclusion is reached that the evidence referred to was competent.

As appears by the record, the objection was not that the declarations, as such, of the testatrix were necessarily incompetent, but that those which the evidence was offered to prove were too remote from the time of her death to render them competent. We think that was not a tenable ground for their exclusion, although it went to the effect of the evidence. There were some objections and exceptions taken to evidence of minor importance which are not entitled to consideration, in view of the rule in such cases that the decree "shall not be reversed for an error in admitting or rejecting evidence unless it appears to the appellate court that the exceptant was necessarily prejudiced thereby." (Code of Civil Pro., § 2545.) There seems to have been no errors in the rulings of the court below to the prejudice of the appellant.

The decree should be affirmed.

SMITH, P. J., and HAIGHT, J., concurred

Decree affirmed, with costs to be paid by the appellant.