In re KENNEDY'S WILL.

(Supreme Court, Appellate Division, First Department.   July 17, 1900.)

1. WILLS—PROBATE OF LOST WILL—PRESUMPTION.

> Where an alleged testatrix executed a will in March, 1895, and it was seen in her possession in January, 1898, and on June 11, 1898, the envelope containing the will was seen in a closet where she was accustomed to keep her papers, but was not seen from that time to her death, on July 31, 1898, nor since her death, and there is nothing to show what became of it, the presumption arises that the testatrix destroyed it with the intention of revoking it.

2. SAME—EVIDENCE—DECLARATIONS OF TESTATRIX.

> Declarations made by an alleged testatrix shortly before her death as to what she had done with certain property referred to in her will, and what provision she had made for her sister, is not competent in a proceeding to probate such will as a lost will, to show that it was in existence when the declarations were made, and that she intended to abide by its provisions.

> Ingraham, J., dissenting.

Appeal from surrogate's court, New York county.

Appeal from a decree of the surrogate's court (62 N. Y. Supp. 1011), dismissing a petition to probate a lost will.   Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

John E. Parsons, for appellants.

William G. Choate, for respondents.

RUMSEY, J.   This appeal is taken from the decree of the surrogate refusing to admit to probate the will of Rachel L. Kennedy, which was propounded as a lost will.   The statute gives to the surrogate's court jurisdiction to admit a lost or destroyed will to probate only in a case where judgment establishing the will could be rendered in the supreme court.   Code Civ. Proc. § 2621.   The authority of the supreme court to enter judgment in such a case is found in section 1865 of the Code, which expressly prescribes that a plaintiff who propounds such a will is not entitled to judgment unless the will was in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime.   The question simply is whether there was evidence from which it might be inferred that the will was in existence at the time of the death of Miss Kennedy.   It appears that it was executed in March, 1895.   It remained in Miss Kennedy's possession from that time, and the paper itself was seen in her possession in January, 1898.   It was kept in an envelope upon which were indorsed the words, "Will of Rachel L. Kennedy."   As late as the 11th of June, 1898, the envelope containing the will, a codicil upon which was indorsed, "Codicil of Rachel L. Kennedy," and a letter addressed to her executors, were seen in a cedar closet of Miss Kennedy's room, in the place where she was accustomed to keep her papers, strapped with an elastic band to a small tin box on one of the shelves.   That seems to have been the last time either of these papers was seen.   The fact that the will has not since been discovered raises the presumption that it was destroyed by Miss

Kennedy with the intent of revoking it, and that presumption stands in the absence of proof by the proponents from which it may fairly be inferred that the will was in existence at the time of her death. Collyer v. Collyer, 110 N. Y. 481, 18 N. E. 110; Hard v. Ashley, 88 Hun, 103, 34 N. Y. Supp. 583.

It is unnecessary here to consider the question whether the will might have been fraudulently destroyed in her lifetime, because there is nothing in the case from which any such fact can be inferred. So there remains simply the question whether the proponents produced sufficient evidence to warrant the surrogate in coming to the conclusion that the will was in existence at the time of the death of Miss Kennedy, at York Cliffs, on the 31st of July, 1898. Upon this question the evidence is exceedingly meager. It appears that, a day or so before Miss Kennedy left for York Cliffs, she took some papers out of a tin box in the cedar closet, and put them into a bag in her trunk. The bag itself was locked, as well as the trunk, and she kept the keys of both. The bag was afterwards returned to New York and given to Van Rensselaer Kennedy, but there is no evidence that the papers which were in the bag when it was taken to York Cliffs were the same which were in it when it was brought back. Perhaps there is no inference that the will was in the bag at all, but, whether it was or not, the inference is not in favor of the proponents. There is no direct evidence as to what became of this will after June 11, 1898. Nor is there any evidence which fairly raises the presumption that the will, being in existence at the time of the death of the testatrix, was destroyed by any one afterwards. It is quite true that Van Rensselaer Kennedy and his secretary, Duval, had opportunities to destroy the will, had either of them seen fit to do so, but that fact of itself is no evidence to establish a fraudulent destruction of the will. Collyer v. Collyer, 110 N. Y. 481, 18 N. E. 110. It would not be sufficient for that purpose even if Van Rensselaer Kennedy had been interested in its destruction, but it is difficult to see how he had any such interest. The legacies under the will, outside of the family, amounted to about $215,000. A legacy of $100,000 was also given to the daughter of Van Rensselaer Kennedy. The remainder of the estate was divided between him and his aunt, who were the only heirs at law and next of kin. If the will was proved these legacies must, of course, have been paid; but the daughter of Van Rensselaer Kennedy would receive $100,000, and he one-half of the estate after the payment of these legacies. If Miss Kennedy died intestate, Van Rensselaer Kennedy would obtain one-half of the estate, and all the legacies, including the one of $100,000 to his daughter, would be lost to the legatees. The difference in the amount which would fall to his family in the second case is not large, and it is hardly credible that a man of standing and position would be induced to commit a crime of this kind for so small an amount as he would gain by the destruction of the will. Except for that unfounded suspicion, there is nothing to overthrow the presumption which the law creates from the fact the will was not found after the death of the testatrix. Upon all the evidence, the conclusion of the surrogate is perfectly satisfactory.

The surrogate excluded certain testimony which it is claimed would have tended to show, if admitted, that Miss Kennedy did not destroy her will, but, on the contrary, supposed that it was in existence down to the time that she left for York Cliffs; and it is claimed by the proponents that, if this evidence had been admitted, it would have established, by almost necessary inference, not only that Miss Kennedy intended to die testate, but that she supposed that her will was in existence. This evidence was all excluded by the surrogate, and, if it was competent, it is quite clear that it might have led him to a different conclusion from the one he reached, and therefore it is necessary to determine whether the evidence should have been received and considered by him. The proponents offered to show by Mrs. Pistor, a competent witness, that, the day before Miss Kennedy started for York Cliffs, she told her what she had done with certain property referred to in her will, and what provision she had made for Alathea Platt, the sister of the witness. That evidence was objected to, and the exception to that ruling raises clearly the point made by the proponents; and the question is whether declarations made by the testatrix, shortly before her death, from which it could be inferred that her will was then in existence and that she intended to abide by the provisions of it, were competent, as tending to prove those facts. The admissibility of testimony of that kind has been the subject of considerable discussion in this state. In the case of Jackson v. Betts, 6 Cow. 377, which was an action of ejectment, the plaintiff claimed under a will that could not be found. As tending to prove the will, the plaintiff offered in evidence the declarations of the testator, made in articulo mortis, as to the existence of the will, and the place it was to be found. These declarations were rejected, and it was held by the supreme court that the ruling was proper, and that declarations of a testator, during his last sickness, as to the existence of the will and the place it is to be found, were incompetent. There was no discussion, but the case seems to have been decided upon the cases of Dan v. Brown, 4 Cow. 483, and Jackson v. Kniffen, 2 Johns. 31. An examination of these cases shows that in the first the precise question was decided as to the identical will. In the case cited (Jackson v. Betts) the court ordered a new trial, which was had, and the report of the new trial is found in 9 Cow., at page 208, but the question as to the competency of the declarations of a testator was not then before the court. From the judgment in that case a writ of error was taken to the court of errors. 6 Wend. 173. In delivering one of the opinions there reported, the chancellor took occasion to consider the correctness of the conclusion of the supreme court when the case was first before them, to the effect that these declarations of a testator were properly excluded, and he disapproved of that ruling; but, as he says, the question was not before the court of errors, and properly he ought not to have expressed any opinion on the question, even if he had doubts as to the correctness of the ruling. The opinion he expressed is entitled to what weight his standing as a judge gives to it, but it is not sufficient to overrule the determination of a court where the question was before it, especially as his opinion in that matter was not con-

curred in by the other judges. In the case of Waterman v. Whitney, 11 N. Y. 157, an issue was tried at the circuit in a proceeding to prove the will of Joshua Whitney. The declarations of the testator were offered in evidence to show how he had disposed of his property by will. The question for determination in that case was whether those declarations were admissible where the will was contested upon the ground that it was executed under undue influence and that the testator was of unsound mind. It was held that they were admissible in connection with other evidence tending to prove mental incapacity, so far as they bore upon that question, but for no other purpose. In examining the admissibility of such declarations, Judge Selden classified the purposes for which such evidence may be offered, and he concluded that declarations showing a revocation of a will, unaccompanied by the act by which the will is revoked, were incompetent; and his conclusion, which seems to have been concurred in by the court, with one exception, was that declarations of a testator as to the revocation of his will were admissible only when they accompanied some act with respect to the will, because they then became part of the res gestæ and characterized the act, but declarations unaccompanied by any act were not competent evidence. There is no distinction, so far as I can discover, between declarations offered to establish that a will has been revoked, and declarations to establish that a will is in existence. In either case they are declarations of the testator as to a fact, and, unless they accompany an act so as to characterize it and make it a part of the res gestæ, they are not competent, in my judgment. The question was examined in Re Marsh, 45 Hun, 107. In that case Mr. Justice Bradley, delivering the opinion of the court, came to the conclusion, "with some hesitation," that such declarations were properly received, although he substantially admitted that in the case of Jackson v. Betts the supreme court had held to the contrary. But it seems to me that a careful examination of the reasoning of Judge Bradley in that case shows that it goes upon a false basis. He practically conceded that such declarations are only competent when they are part of the res gestæ characterizing some act which they accompany, but he says that, in the case of the existence of a will which is presumed to be in the possession of the testator, the act accompanying the declarations is the possession of the will, and the declarations characterize that act. But the question is whether the will is in existence, in the possession of the testator, and the admission of these declarations to prove that the will is actually in existence amounts to admitting them to prove the very fact which must exist to make the declarations competent. It is hardly possible that it can be said that such declarations, which would be entirely incompetent unless the will was in existence, are competent to prove the very fact the existence of which makes them competent. The question was examined in the case of Hamersley v. Lockman, 2 Dem. Sur. 524, and the learned surrogate of this county, after a careful review of all the cases, came to the conclusion that such declarations are not competent; and his opinion is a very satisfactory review of the cases in this state down to the time it was written. I think that, upon the

authorities, there can be no doubt that such evidence is not compe-
tent in this state, and upon the principle suggested by the chan-
cellor in Jackson v. Betts, 6 Wend. 173, as well as in Waterman v.
Whitney, supra, which satisfactorily give the reasons why such dec-
larations should not be admitted.   In this examination of the authori-
ties, it is not necessary to examine into the authorities in other states.
In England, in the case of Sugden v. Lord St. Leonards, 1 Prob. Div.
224, evidence of this nature was admitted; but, so far as I can dis-
cover, this case stands alone in that country, and there are not a
few dicta and other judgments from which it can be inferred that
evidence of that nature is not considered competent upon principle.
The conclusion which I have reached is that such evidence is not
competent, and that the surrogate did not err in rejecting it.

Upon the whole case, therefore, the decree of the surrogate must
be affirmed, with costs.   All concur, except INGRAHAM, J., who dis-
sents.

INGRAHAM, J. (dissenting).  On the 19th day of March, 1895,
Rachel Lenox Kennedy, the decedent, executed a last will and tes-
tament, which had been carefully prepared by her legal adviser, and
which disposed of all her property.   On the 7th of November, 1897,
she executed a codicil to this will, by which she made a few addi-
tional legacies and reaffirmed the will.   In a letter to her attorney,
in answer to a letter inclosing the codicil, she said:

"Your letter, with paper inclosed, was received this evening. and I am much
obliged to you for sending it to me so promptly.   It is exactly what I want,
and I have nothing to suggest."

Subsequent to sending this letter she executed the codicil, and
the will and codicil were in existence in the early part of June, 1898.
At this time the decedent was in bad health, and her medical adviser
had come to the conclusion that she was suffering from a disease
from which she could not recover, but no communication seems to
have been made to her of that fact.   On the 21st of June she left
New York for a summer resort on the coast of Maine.   It does not ap-
pear that she took the will with her to Maine, although, as she took
some papers with her, it is not impossible that she did.   She died
on July 29, 1898, without returning to New York, and after her death
no will was found.   It does not appear that there was any change
in the circumstances of the decedent after the execution of this codi-
cil, or that anything happened that would indicate a change of in-
tention as to the testamentary disposition of her property.   It did
appear that she was extremely careless with her papers and securi-
ties;  that at one time she lost this will, and was unable to find it
for some time;  that she left a codicil to her will in a cab,—and the
will seems to have been kept in a desk or closet in her house.   These
facts, coupled with the interest that she took in charities, for which
provision was made, certainly produce an impression that she did
not intend to die intestate, and that her will and codicil had in some
way been lost or mislaid.   I quite agree, however, that this is not
sufficient to overcome the presumption that arises from the disap-
pearance of the will, and that from this evidence the court would

not have been justified in finding that the will was in existence at the death of the decedent, or that it had been fraudulently destroyed during her life. It is only fair to add that I cannot find in this evidence anything that would justify even a suspicion that Mr. Kennedy was in any way connected with the disappearance of the will. Upon the trial there was admitted a large mass of testimony relating to the acts and declarations of the decedent from the time that she executed the will to her death. The proponent also offered to prove certain declarations of the decedent, both before and after she left New York on the 21st of June, which tended to show that she understood that the will was in existence; but this was objected to by the contestants, and excluded by the surrogate. I can see no distinction between these declarations offered to be proved by the proponent, and the other written and verbal declarations of the decedent which were admitted in evidence. There can be no doubt that a person who receives a legacy by a will would be incompetent to prove any declarations made to him by the decedent, under section 829 of the Code of Civil Procedure; but that is because the witness is disqualified from testifying as to a personal transaction between himself and the decedent, not because the evidence of declarations made by the decedent is incompetent. It is quite doubtful whether the declarations made to others than those interested in the probate of the will which were offered in evidence would be sufficient, if admitted in evidence, to justify the probate of the will; but I do not concur in the opinion of the court that declarations of the decedent, after the execution of the will, from which an inference can be drawn that she understood that the will was in existence, were incompetent. I agree as to the unsatisfactory character of such evidence; that it should be scrutinized with the greatest care. We must, however, bear in mind the distinction between the admissibility of testimony and the weight to be given to it, and also that there is a difference in the probative force of such testimony in relation to the subject which is intended to be proved by it. I quite agree that such declarations cannot be used to prove the contents of the will, or as evidence of a fact not connected with the intention of the persons whose declarations are sought to be proved. The revocation of a will, however, involves something more than the destruction or obliteration of the paper upon which it is engrossed. The statute provides that:

"No will shall be revoked or altered otherwise than by some other will in writing or some other writing of the testator declaring such revocation or alteration * * * or unless such will be burnt, torn or cancelled, obliterated or destroyed, with the intent and for the purpose of revoking the same by the testator himself or by another person by his direction or consent." 2 Rev. St. c. 6, tit. 1, art. 3, § 42.

The intent and purpose of the testator thus become a material subject of inquiry. It is conceded that these declarations would be competent when accompanying the act which destroyed or obliterated the instrument, as part of the res gestæ, but there was no evidence of the time when or the circumstances under which this will was destroyed. There was a presumption that such will was at some time prior to the death of the decedent destroyed, with intent to revoke

the same, which arose from the fact that after the death of the decedent no will was found. If destroyed, the will must have been destroyed some time between the 11th of June and the death of the decedent, in July. It seems to me that it may fairly be said that declarations made during that period are a part of the res gestæ. There is a class of cases which recognize an exception to the rule that hearsay evidence is not admissible where the subject of inquiry is an intention, a course of conduct, or knowledge of a fact. In the Aylesford Peerage Case, before the committee of the house of lords (11 App. Cas. 1), the question presented was as to the legitimacy of a child born during coverture; and declarations of the mother after she had separated from her husband and was living with another man were received in evidence, as part of the res gestæ of her relations to the reputed father of the child, to rebut the presumption that the child was legitimate, although her evidence to that effect would not have been admissible. The Earl of Selborne, in his judgment, said:

"I am of opinion that these letters ought to be read. The authorities which have been referred to I assume to be still in force; that is to say, that you could not put into the witness box Lady Aylesford, or, if he were still living, Lord Aylesford, for the purpose of proving who the real father of the child was. But it by no means follows that you cannot prove acts and conduct of the one or the other tending, as part of a series of res gestæ, to throw light upon, and to lead to a just conclusion upon, a question on which they could not directly be permitted to give evidence."

And Lord Blackburn said that the presumption was that the husband was the father of the child, but that presumption could be rebutted by the conduct of the parties, and that these letters come within the class of evidence of conduct which is evidence leading to the conclusion that the child was not legitimate. The same exception was recognized and applied in Swift v. Insurance Co., 63 N. Y. 186.

In the case now before us the question was whether or not this decedent had destroyed her will with intent to revoke it; and it seems to me that, within this rule, any act or declaration of the decedent which tended to prove a condition of mind or an intention inconsistent with the destruction of the will with intent to revoke it tended to negative the fact that it was destroyed with such an intent, and thus to rebut the presumption arising from the fact that the will was not found after her death, and for that purpose was competent evidence. Such declarations, when offered to prove the intent of the person making them, are not, strictly speaking, hearsay, but evidence of the state of mind or mental condition of the person making them at the time they are made. It is well settled that the declarations of a person whose mental condition is in question are admissible, and thus declarations of persons whose testamentary capacity is questioned are admissible, not to prove the facts stated, but to prove the condition of mind at the time the act which is being considered was performed. It may be that such declarations would have little, if any, probative force to prove the existence of the paper at the time of the death of the decedent, but they were, I think, com-

petent evidence in the proceeding to prove the decedent's intent as to this particular instrument, which had been duly executed. There seems to be no dispute but that the rule in England and in the other states justifies the admission of this testimony. In England it would seem that the rule is well settled. In the leading case of Sugden v. Lord St. Leonards, 1 Prob. Div. 154, declarations of the testator in relation to his will were admitted in evidence. It was claimed by counsel for the defendant that these declarations were not competent to prove the contents of the will, but it does not appear that their admissibility as evidence was questioned. In that case great weight was given to the declarations of the testator upon the question as to the revocation of the will, and the only doubt expressed by Lord Justice Mellish was in regard to the competency of the declarations of the testator to prove the contents of the will. In Woodward v. Goulstone, 11 App. Cas. 469, Lord Herschell, in the house of lords, doubts the correctness of the ruling in Sugden v. Lord St. Leonards, but it is quite evident from his remark that he referred to the question raised by Lord Justice Mellish as to the competency of the declarations of the testator for the purpose of proving the contents of the will; and there can be no doubt, I think, but that it has been the universal practice in England to admit the declarations of a decedent as evidence upon the question of the revocation of the will. In the other states I think there is no question but that, so far as they have passed upon the question, such declarations have been held admissible. The cases upon this subject are collected in a note to the case of Clark v. Turner (Neb.) 69 N. W. 843, 38 L. R. A. 436. No case is there referred to, nor am I aware of any, which holds that the declarations of the testator are inadmissible. In 13 Am. & Eng. Enc. Law, p. 1091, the rule is stated as follows: "Declarations of the testator as to the existence of his will are admissible;" and a large number of cases are cited in the note to sustain this statement. In our own state there has been a conflict of opinion on the question. The prevailing opinion is based upon the cases of Dan v. Brown, 4 Cow. 483, and Jackson v. Betts, 6 Cow. 377. In neither of those cases was the question involved in the decision. Dan v. Brown, 4 Cow. 483, was an action for partition; the defendant relying upon the proof of a lost will. The defendant had a verdict, and on appeal to the supreme court the verdict was set aside upon the ground that the loss of the will was not sufficiently proved to warrant the introduction of secondary evidence of its contents. The court, in discussing the question as to the proof of the revocation of the will, incidentally remarked:

"The execution of the will being established, the next question is whether there was any evidence that it was canceled. On this point I lay no stress upon the declarations of the testator. They were made long after the execution of the will, and shortly before his death. They are not evidence, unless they relate to the res gestæ or to an act done, as where by mistake the will is torn or thrown into the fire. The declarations of the testator are in such cases evidence, where they show the quo animo."

But the case was decided upon the other ground. The question upon the same will was again before the supreme court in the case of

Jackson v. Betts, 6 Cow. 377. There the plaintiff had been nonsuited, the circuit court holding that, upon the proof, parol evidence of the contents of the will was inadmissible; but a new trial was granted upon the ground that the court should have admitted such evidence. In the course of the opinion, Sutherland, J., remarked that the—

"Declarations of the testator during his last sickness as to the existence of his will and the place where it would be found were incompetent evidence,. and were properly rejected by the judge. The point was decided in Dan v. Brown, supra, in relation to this very will."

This observation was not made in relation to the point decided in the case, as a new trial was ordered upon the ground that evidence which had been rejected should have been admitted. Upon the new trial (9 Cow. 208) it appeared that certain declarations of the testator were excluded. In the course of the opinion the court said:

"On the last trial the counsel for the defendant cited the case in 6 Cow. 377, to prove that the evidence offered for the purpose of showing a revocation ought to be submitted to the jury to pass on.. * * * The plaintiff offered to prove that the day before the testator was taken sick he called upon Lockwood and requested him to draw a codicil to his will. This evidence was objected to, but admitted. Lockwood testified that the testator applied to him to draw a codicil, but it was not done. The will was not produced. It is not material in the decision of this cause whether Lockwood's testimony was competent or not; for it will be seen, in the view taken, that the will was sufficiently proved, independent of this evidence, and did not require its support."

From this it must appear that it was not considered that the former decision had settled the question, as declarations of the deceased were admitted on the trial. Upon appeal to the court of errors (reported in 6 Wend. 173), the chancellor, in ordering a new trial, commented upon the exclusion of the declarations of the testator, and said:

"It is to be regretted that the question as to the admissibility of declarations of the testator to repel or to confirm the presumption that the will had been destroyed by him is not in a situation to be examined and decided by this court before the new trial takes place. The supreme court, on a former occasion (6 Cow. 382), decided that the circuit judge had correctly rejected evidence of the declarations of the testator, in his last sickness, recognizing the then existence of the will, and directing as to the place where it might be found. As that question could not be raised or argued in this cause, I have not examined the subject sufficiently to have made up a definite opinion thereon; and probably I ought not now to express such opinion, even if I had no doubts on the subject. I will therefore only say that, in the investigation of the other questions in this cause, I have necessarily been compelled to look into this subject so far as to see there is sufficient doubt as to the correctness of the decision of the supreme court on that point to authorize them to direct a reargument of the question if it shall again come before them. The frequent insincerity of testamentary declarations, and the great danger that the real meaning of the testator may be mistaken or misrepresented when he is no longer able to explain what he meant, must, in general, render such declarations of but little value as evidence. But they are sometimes received to explain a latent ambiguity, or to ascertain the intention of the testator in case of doubts arising from an equivocal act; and the uniform practice of the English testamentary courts has been to receive such declarations to strengthen or repel the presumption that a will once legally executed, but not found at the death of the testator, had been destroyed by him."

It would thus seem quite clear that the question was not decided by the supreme court, and in the court of errors the question was considered open for subsequent determination.

The next case to which attention should be called is Knapp v.

Knapp, 10 N. Y. 276. There the declarations of the deceased were admitted apparently without objection. The supreme court held that the evidence was not sufficient to justify a finding that the will was in existence at the time of the death of the decedent, and upon an appeal to the court of appeals that decision was affirmed, but no doubt was expressed upon the competency of the testimony. In Waterman v. Whitney, 11 N. Y. 157, the question was as to the testamentary capacity of the testator, and the court there held that declarations of the testator were competent upon that question, and, as such declarations had been excluded, reversed the judgment. Judge Selden, in the discussion of the question as to the admissibility of declarations of the deceased, classified them into three groups: First, those offered to show a revocation of a will admitted to have been once valid; second, to impeach the validity of a will for duress, or on account of some fraud or imposition practiced upon the testator, or for some other cause not involving his mental condition; and, third, to show the mental incapacity of the testator, or that the will was procured by undue influence. And he came to the conclusion that declarations of the testator were not admissible to show a revocation of a will admitted to have been once valid. That question, however, was not before the court for consideration, and was not involved in the decision; and the attention of the court was not drawn to the question presented in this case, viz. "the competency of declarations of the testator to prove his intent as to revocation, nor to the cases in other states. It seems to have been assumed that Jackson v. Betts, supra, decided the question against the admissibility of such declarations, although, as we have seen, the question was not presented in that case for determination. In Re Marsh, 45 Hun, 108, the same question was examined by Judge Bradley, in delivering the opinion of the general term of the supreme court. The decisions in this state were reviewed, and he came to the conclusion that such declarations were admissible to prove the intent of the testator. The same question was before Surrogate Rollins in the case of Hamersley v. Lockman, 2 Dem. Sur. 524, where he came to the conclusion that such declarations were not competent. In Collyer v. Collyer, 110 N. Y. 481, 18 N. E. 110, the declarations of the deceased seem to have been proved both by the proponent and the contestant, and it was held that the evidence was not sufficient to justify the probate of the will. The only notice in the opinion as to the competency of these declarations was:

"As the evidence on the part of the petitioner wholly failed to make out his case, he was not harmed by any of the evidence offered and received on behalf of the contestants to which he makes objections, and such objections need not, therefore, be considered."

I have now called attention to all the cases that appear to have discussed the question in this state, and think it clear that in no case was the question directly presented to the court, except in Re Marsh, and Hamersley v. Lockman, supra, and in no case has the question been finally determined by an adjudication binding upon us. In this state of the authorities, and considering the universal practice in the other states and in England, and believing as I do that this testimony is competent upon the question of the intent of the deceased, I do not concur with Mr. Justice RUMSEY.