NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1884.

## HAMERSLEY v. LOCKMAN.

*In the matter of the application for probate of a paper
propounded as the will of* LOUIS C. HAMERSLEY,
*deceased.*

The decision of the Court of Errors, in Betts v. Jackson, 6 *Wend.*, 173,
has established, as the settled law of this State, that, when it is
proved that an instrument executed as a will cannot be found after
the death of its maker, a presumption arises that it was revoked by
him in his lifetime.

The question of the admissibility of a testator's declarations to show the
revocation of his will should be tried by the same tests as that of the
admissibility of such declarations to show non-revocation.

Under Code Civ. Pro., § 2617, which provides that, in a proceeding to
procure probate of an alleged will "any person, although not cited,
who is named as a devisee or legatee    . . . .    in any other
paper purporting to be a will of the decedent may appear, and, at his
election, support or oppose the application," one claiming the right
to intervene, upon the ground specified, must show, either that such
other paper was in existence when decedent died, or that it had been
previously lost or without his procurement destroyed.

But declarations of the decedent are not competent evidence of such
existence, loss or destruction.

The doctrine of Waterman v. Whitney, 11 *N. Y.*, 157—expounded and
applied.

APPLICATION by J. Hooker Hamersley to be allowed
to intervene in proceedings instituted, for the probate
of a paper propounded, as decedent's will, by Jacob K.
Lockman and another, the persons therein named as
executors.

Section 2617 of the Code of Civil Procedure provides that, in a proceeding for the probate of a paper propounded as a will "any person, although not cited, who is named as a devisee or legatee . . . in any other paper purporting to be a will of the decedent, may appear and, at his election, support or oppose the application."

Pending a proceeding for the probate of a paper claimed to be the last will and testament of Louis C. Hamersley, J. Hooker Hamersley asked to be made a party, alleging that he had reason to believe and did believe that, by a will of the decedent executed in 1876, he, the petitioner, was named as legatee and devisee. The will of 1876 was not produced, and the Surrogate held that, before the applicant could be permitted to intervene, it was incumbent upon him to show, either that the will of 1876 was in existence when the decedent died, or that it had been previously lost or, without his procurement, destroyed. The petitioner thereupon proceeded to offer evidence in support of his application. After certain witnesses had sworn to the execution, by the decedent, of a will prior to the date of the paper offered for probate, and some evidence had been introduced tending to show that the petitioner was named in such prior will as a legatee or devisee, a witness was asked whether, upon a certain day in February, 1883—about one week prior to the date of the latter paper—the decedent, in conversation, referred to a will in connection with some remark about his wife. The witness answered in the affirmative, whereupon he was asked, under objection, to state what the remark was. Counsel for the petitioner urged that the decedent's declarations

should be received in evidence ; that, even if not admissible to establish the *fact* of the existence or non-existence of the will of 1876 and the *facts* connected with its loss or destruction,—if it had been lost or destroyed—they were, at least, competent to show the condition of the decedent's mind regarding those matters.

The Surrogate, after holding the question under advisement, delivered the following opinion :

H. PARSONS, *for applicant.*

GEO. G. DEWITT, JR. *and* JAMES C. CARTER, *for proponents, opposed.*

THE SURROGATE.—In the matter of the admissibility of the evidence sought to be introduced at the close of the last hearing, I have examined the cases cited upon the briefs of counsel, and such others pertinent to the inquiry as I have been able to discover. The recent utterances of the English courts strongly favor the views which have been urged in behalf of this petitioner. Those views are also supported by several decisions of judicial tribunals in our own country. In passing, however, upon the question in dispute, I shall content myself with referring to such cases, and such only, as have been determined by the courts of the State of New York. Of these, the earliest which has fallen under my observation is Jackson v. Kniffen (*2 Johns., 31*), decided in 1806. In the brief presented by counsel for this petitioner he says, in commenting upon the decision in the case just cited, that the declarations, which were there held to be incompetent, were offered as evidence that a will produced and shown to have been validly executed was void, and he insists that, in substance, that decision amounted only to this : that parol evidence

is inadmissible to prove revocation. That was, indeed, one phase of the decision, but there was another. The decedent, near the close of his life, had earnestly protested that the paper in dispute was not and had never been his will, because of the fact that it had been obtained from him by duress. His declaration to that effect was held by the Supreme court to be incompetent evidence of the fact.

The next reported case, whose determination involved a question similar to that now under discussion, was Dan v. Brown (*4 Cow.*, *483*—1825). This was a partition proceeding, in which certain declarations of a decedent respecting the revocation of his will had been received in evidence, though apparently not under objection, by Judge DUER at the Circuit. Judge WOODWORTH, in reviewing the testimony, says : " I lay no stress upon the declarations of the testator. They were made long after the execution of the will, and shortly before his death. They are not evidence unless they related to the *res gestæ.*"

In the following year (1826), the Supreme court decided Jackson v. Betts (*6 Cow.*, *377*). The court below had refused, under objection, to admit in evidence certain declarations of a decedent as to the existence and whereabouts of a disputed will. It was held, on appeal, that these declarations were incompetent evidence, and that they had been properly rejected. It is stated upon Mr. Parsons' brief, in the present proceeding, that the decision of the Supreme court in Jackson v. Betts, above cited, was unanimously reversed by the Court of Errors, in Betts v. Jackson (*6 Wend.*, *173*). Such is not the fact. The decision reversed was one made by the Su-

preme court in a *later* case of Jackson v. Betts, which is reported in 9 Cow., 208. By its judgment in the *earlier* case with that title, the Supreme court had reversed the judgment of the Circuit court, and had granted a new trial. The cause was again heard and determined, and it is the proceeding upon appeal from the second judgment that is reported in Jackson v. Betts (*9 Cow., 208*). The question now under discussion was in no manner involved in the case of Betts v. Jackson, as decided by the Court of Errors. In conducting the second trial at the Circuit, the parties had evidently acquiesced in the decision of the Supreme court, as to the inadmissibility of the decedent's declarations. But the Supreme court held, upon motion for a third trial, that the fact that a will, shown to have been executed by the decedent, was not found at his death, although diligently searched for, did not of itself raise the presumption that he himself had destroyed or canceled it, *animo revocandi*. It was this doctrine, and this only, which was subsequently overturned by the Court of Errors.

To the question now before the Surrogate no allusion was made, by any member of that tribunal except Chancellor WALWORTH. He said (*6 Wend., 187, 188*) : "If there is a new trial in this case, as I think there must be, it is to be regretted that the question as to the admissibility of the declarations of the testator to repel or to confirm the presumption that the will had been destroyed by him is not in a situation to be examined and decided by this court before the new trial takes place. The Supreme court on a former occasion decided that the Circuit Judge had correctly rejected evidence

of the declarations of the testator in his last sickness, recognizing the then existence of the will, and directing as to the place where it might be found.    As that question could not be raised or argued in this cause, I have not examined the subject sufficiently to have made up a definite opinion thereon.    And probably I ought not now to express such an opinion, even if I had no doubts on the subject.    I will, therefore, only say that, in the investigation of the other questions in this cause, I have necessarily been compelled to look into this subject so far as to see there is sufficient doubt as to the correctness of the decision of the Supreme court on that point to authorize them to direct reargument of the question if it shall again come before them."    He then added this comment :    "The frequent insincerity of testamentary declarations, and the great danger that the real meaning of the testator may be mistaken or misrepresented when he is no longer able to explain what he meant, must in general render such declarations of little value as evidence.    But they are sometimes received to explain a latent ambiguity, or to ascertain the intention of the testator in case of doubts arising from an equivocal act, and the uniform practice of the English testamentary courts has been to receive such declarations to strengthen or repel the presumption that a will once legally executed, but not found at the death of the testator, had been destroyed by him."

In the case of Knapp v. Knapp (*10 N. Y.*, *276*—1851) evidence was introduced, to the effect that the testator had declared that he had made a will, and that he "had it safe," and that it contained certain specified provisions in favor of one of the parties to the suit.    To

the competency of that evidence, no objection seems to have been made at the trial. The fact, therefore, that it was considered by the appellate court cannot fairly be regarded as any sanction of its admissibility. The same criticism may justly be made upon the decision of Surrogate BRADFORD, in Bulkley v. Redmond (*2 Bradf.*, *281*—1853).

Next came the case of Waterman v. Whitney (*11 N. Y.*, *157*—1854). I shall reserve for later consideration my comments upon that decision.

In 1873, the Supreme court in the Fourth Department decided Sisson v. Conger (*1 T. & C.*, *564*). The plaintiff in that action sought to establish a will which had been destroyed by its maker. It was admitted that such destruction had taken place, but it was claimed that the decedent was, at the time, incapable of revoking his will. The defendant offered to prove decedent's after-declarations respecting the circumstances of the destruction. The evidence was excluded, and, in the judgment of the General Term, the exclusion was proper.

In 1877, the Court of Appeals passed upon one of the phases of the present inquiry, in Cudney v. Cudney (*68 N. Y.*, *148*). It was there held that, where a decedent's will is claimed to have been procured to be executed by undue influence, his declarations that such influence had been exerted are not competent evidence to prove the fact, but that, when the fact of the exercise of such influence has been otherwise shown, the declarations are admissible, as tending to indicate the effect which the exercise of such influence has produced upon decedent's mind. The views expressed by the Court of

Appeals, in Cudney v. Cudney, were subsequently reasserted in Horn v. Pullman (*72 N. Y., 269*—1878), and in Marx v. McGlynn (*88 N. Y., 357*).

Eighmy v. The People (*79 N. Y., 546*—1880) is cited by the petitioner's counsel, in support of his contention. Upon examining the facts of that case, however, it appears that the declarations, which the court there held to have been properly admitted in evidence, were declarations accompanying the act of destruction of the will in question, and were manifestly a part of the *res gestæ*.

In Waterman v. Whitney (*supra*), Judge SELDEN, pronouncing the opinion of the Court of Appeals, very fully discusses the question how far the declarations of a decedent are admissible in proceedings involving the validity of an instrument purporting to be his will. In reviewing the different cases in which such declarations had been sought to be put in evidence, Judge SELDEN makes the following classifications : 1st, where such declarations had been offered to show the revocation of a will admitted to have been once valid ; 2nd, where they had been offered to impeach the validity of a will for duress, or because of fraud or imposition practised upon its maker ; 3rd, where it had been claimed that their introduction would tend to throw light on the question of the decedent's mental capacity, or the question whether his disputed will had been procured by undue influence. This classification was intended to be complete and exhaustive, and such cases as the one at bar are manifestly within it. I see no reason why the question of the admissibility of a testator's declarations to show the revocation of his will should not be tried

by the same tests as the question of the admissibility of a testator's declarations to show non-revocation.

In Bibb v. Thomas, cited in Judge SELDEN's opinion, declarations of a decedent as to why he had thrown his will into the fire were admitted, for the purpose of showing that he intended to destroy and thus to revoke it. With a view, on the other hand, of showing the absence of such intention, declarations of a testator were admitted in Doe v. Perks, another case to which Judge SELDEN refers: "I consider," he says, after discussing various judicial decisions, "these cases as establishing the doctrine that, upon the question of revocation, no declarations of the testator are admissible, except such as accompany the act by which the will is revoked, such declarations being received as part of the *res gestæ*, and for the purpose of showing the intent of the act."

In regard to cases falling within his second division, Judge SELDEN says: "Where the validity of a will is disputed on the ground of fraud, duress, mistake or some similar cause aside from mental weakness of the testator, I think it equally clear that no declarations of the decedent himself can be received in evidence, except such as were made at the time of the execution of the will, and are strictly part of the *res gestæ*.

A broad line of distinction is subsequently drawn by the learned Judge, between such cases as fall within the first or second of the three divisions he has established, and such as range themselves under division three. That division is confined to cases where the subject of inquiry is, either the mental capacity of the decedent, or his susceptibility to undue influence and control.

The law of New York, in relation to this branch of

the subject, is too well settled to require discussion. Where a testator's mental condition is itself the very fact to be ascertained, his words are of course competent evidence; and, as has been stated already, where it is claimed that a testator has been led by undue influence to make and execute his will, it is competent after, but not before, evidence has been given of the actual exercise of such influence, to show, by the declaration of the testator, what effect has been thereby produced upon his mind.

Now, what comes of applying the doctrine of Waterman v. Whitney to the facts of the case at bar? The decision in Betts v. Jackson (*supra*) seems to have established conclusively, as the law of this State, this proposition—that, when it is proved that an instrument executed as a will cannot be found after the death of its maker, a presumption arises that it was revoked by him in his lifetime. Such is the presumption here, and, unless it shall be rebutted by this applicant, his petition must be denied. The evidence thus far introduced has not shown that the will of 1876 was in existence when the decedent died, or that it had been previously destroyed without his knowledge or approval, or that, if destroyed by his own act, or procurement, its destruction had been prompted by persuasion of any other person or persons.

Under these circumstances, I cannot see how any declarations he may have made to the witness concerning the will of 1876 can be competent or material, unless for the purpose of proving the very fact or facts to which they relate; and that they are not admissible for that purpose seems to me to be established by the cases

above cited, and especially by the case of Waterman v. Whitney. I must, therefore, decline to receive those declarations in evidence.