# IN RE COLBERT'S ESTATE.
## SCHEUER, APPELLANT, *v.* STATE ET AL., RESPONDENTS.

(No. 2,000.)

(Submitted November 15, 1904.   Decided December 24, 1904.)

*Will Contest—Procedure—Presumption of Revocation — Evidence of Lost Will—New Trial—Appeal.*

Appeal—Bill of Exceptions.
    1.  A bill of exceptions not made a part of the statement on motion for a new trial cannot be considered on appeal from the order denying it.
Probate of wills—Contests—Practice.
    2.  Under Code of Civil Procedure, Sections 2340-2346, the proponent of a will must first make out a *prima facie* case; that is, make such proof as would entitle the will to probate in the absence of a contest.  The contestant then attacks its validity, the proponent defends the same, and the contestant rebuts the testimony of the proponent, who may sur-rebut any new testimony; but the contestant has the right to open and close.
Lost Wills—Presumption—Burden of Proof.
    3.  It being proved that a lost will was last seen in the possession of the testator, who was in the exercise of his mental faculties, the presumption is that he himself destroyed it *animo revocandi,* and the burden of proof is then on the proponent to overcome such presumption.
Lost Wills—Destruction—Presumption—Proof.
    4.  To overcome the presumption that the testator destroyed a lost will, the proof must be clear, satisfactory and convincing.
Lost Wills—Witness—Possession—Evidence.
    5.  Evidence that one who was alleged to be a witness to a lost will, but who denied the same, stated at the funeral of testator that he had the will in his pocket, did not tend to prove even remotely that the witness had it in his possession, no one ever having seen it in his possession so far as the testimony disclosed.

Lost Wills—Declarations of Testator—Presumption of Revocation.
    6.   Declarations of the testator, when not a part of the *res gestae,* are inadmissible, in conjunction with testimony of witnesses who had seen a lost will, to overcome the presumption of revocation from the fact that the will was last seen in his possession when he was in the exercise of his mental faculties.

New Trial—Newly Discovered Evidence—Affidavit—Sufficiency.
    7.   The uncontradicted affidavits for a new trial on the ground of newly discovered evidence in proceedings to establish a lost will showed diligence on the part of proponent, and that a newly discovered witness would testify that he was shown the will by the testator, and was familiar with its contents, and that after his death he was shown the will by, and recognized it in the hands of, a subscribing witness to the will, such evidence of its existence being the essential evidence which proponent lacked on the trial. *Held,* that the court abused its discretion in not granting a new trial.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

PETITION by Frederick Scheuer to probate an alleged lost will of Charles Colbert, deceased. Objections were filed thereto by the state and others, and from a judgment denying the probate thereof and from an order denying a new trial, the petitioner appeals. Reversed.

*Mr. James Donovan,* and *Mr. C. F. Kelley,* for Respondent.

The contestant is not called upon to submit any evidence in support of his contest or protest until after a case has been made by the proponents of the will. (*Collyer* v. *Collyer,* 110 N. Y. 481; *Idley* v. *Bowen,* 11 Wend. 227; *Holland* v. *Ferris,* 2 Bradf. 333; *Newell* v. *Homer,* 120 Mass. 277; *Harris* v. *Harris,* 10 Wash. 555; *Perry* v. *Perry,* 49 N. Y. S. R. 291; *Hatch* v. *Sigman,* 1 Dem. 519; *Behrens* v. *Behrens,* 47 Ohio St. 323; *Miner* v. *Guthrie,* (Ky.) 4 S. W. 179; *Jaques* v. *Horton,* 76 Ala. 238.) The burden of proof is on the propounders of a lost or destroyed will to show that it was in existence at the death of the alleged testator, or was destroyed in his lifetime without his consent or knowledge, in order to overcome the presumption of revocation. (*Clark* v. *Turner,* 38 L. R. A. 434, note B, and cases cited; *In re Marsh,* 45 Hun. 107; *Betts* v. *Jackson,* Brown, 6 Wend. 173; *Idley* v. *Bowen,* 11 Wend. 236; *Knapp* v. *Knapp,* 10 N. Y. 276; *In re Nichols,* 40 Hun. 387;

*Buchle's Estate,* 3 Pa. Dist. R. 16; *Mercer* v. *Mercer,* 87 Ky. 21.)   The testimony of each and all of the witnesses for the proponents of the alleged lost will was to the effect that the alleged lost will was always in the possession of the testator, Charles Colbert, and the last seen of it was in his possession. The presumption is therefore conclusive that he destroyed and revoked the same prior to his death.   This is so universally held that it would hardly be necessary to cite authorities in addition to what have already been given.   (*In re Kennedy's Will,* 62 N. Y. Supp. 1011; *Knapp* v. *Knapp,* 10 N. Y. 276; *Schultz* v. *Schultz,* 35 N. Y. 653; *Hard* v. *Ashley,* 88 Hun. 103, 34 N. Y. Supp. 583; *In re Nichols,* 40 Hun. 387; *Betts* v. *Jackson,* 6 Wend. 173; *Colvin* v. *Fraser,* 2 Hagg. Ecc. 266; 3 Phillim. Ecc. 126, 462, 552; 1 Swab. & Tr. 32; 32 Law J. Prob. 202; 36 Law J. Prob. 7; 7 El. & Bl. 886.)

*Mr. John J. McHatton, Mr. George F. Shelton,* and *Mr. O. J. Saville,* for Appellant.

On the trial, the contestant was plaintiff and had the affirmative of all issues raised by the contest.   (Code of Civil Proc. Sec. 2340; *Barney* v. *Hayes,* 11 Mont. 99; *Estate of Dalrymple,* 67 Cal. 444; *In re Burrell,* 77 Cal. 479, 481; *Estate of Wooten,* 56 Cal. 322, 325; *Estate of Collins,* (Cal.) Myrick's Rep. 73.) The burden of proof was on the contestant.   (Code of Civil Procedure, Sec. 3290; *Scott's Estate,* 128 Cal. 57, 60 Pac. 527; *In re Latour's Estate,* (Cal.) 73 Pac. 1070.)   Where a will legally executed has been offered for probate, the *onus* is upon the contestant to prove its revocation.   The presumption of law is that this will continued in existence and unrevoked by the testator at the time of his death.   (*Sugden* v. *Lord St. Leonards,* 1 Probate Div. 154, reported in Moak's English Reports, Vol. 17, p. 453; *Page* v. *Maxwell,* 118 Ill. p. 576, is a strong case to the same effect; *Harris* v. *Knight,* 15 Pro. Div. 170, reported in Abbott's Cases on Descent, Wills and Administration, page 479; *Tynan* v. *Paschal,* 27 Tex. 386; *Davis* v. *Sigour-*

*ney,* 8 Metc. (Mass.) 487; *Minkler* v. *Minkler,* 14 Vt. 125; *Elizabeth Smith's Will,* 3 Houst. (Del.) 335.) Declarations of the testator are admissible to show that he believed his will to be in existence at the time of his death. (*Behrens* v. *Behrens,* 47 Ohio St. 323; *Sugden* v. *Lord St. Leonards, supra; Whitely* v. *King,* 17 C. B. (N. S.) 756; *Keen* v. *Keen,* L. R. 3 P. & D. 105; *Collagan* v. *Burns,* 57 Me. 465; *Lawyer* v. *Smith,* 8 Mich. 412; *Smock* v. *Smock,* 11 N. J. Eq. 157; *Smiley* v. *Gambill,* 2 Head. (Tenn.) 164; Redfield on Wills, Secs. 322, 323; *In re Groot's Will,* 9 N. Y. Supp. 471.)

It is proper to prove the contents of a will by witnesses who had seen and read the will and were acquainted with its contents. (Code of Civil Procedure, Sec. 2371; *Sugden* v. *Lord St. Leonards, supra; Johnson's Will,* 40 Conn. 588; *Southworth* v. *Adams,* 11 Biss. 256; *Page* v. *Maxwell,* 118 Ill. 576; *Harris* v. *Knight,* 15 Pro. Div. 170; *Tynan* v. *Paschal,* 27 Tex. 386; *Davis* v. *Sigourney,* 8 Metc. (Mass.) 487; *Minkler* v. *Minkler,* 14 Vt. 125; *Elizabeth Smith's Will,* 3 Houst. (Del.) 335; *Foster's Appeal,* 87 Pa. St. 67; *In re Soule's Will,* 15 N. Y. Supp. 934; *Dan* v. *Brown,* 4 Cowen, (N. Y.) 483; *Fetherly* v. *Waggoner,* 11 Wend. (N. Y.) 602; *Rankin* v. *Crow,* 19 Ill. 624; *Cook* v. *Hunt,* 24 Ill. 535; *In re Camp's Estate,* (Cal.) 66 Pac. 227, 228; I Underhill on Wills, Sec. 274, p. 374; *Morris* v. *Swaney,* 7 Heisk. (Tenn.) 591; *Everitt* v. *Everitt,* 41 Barb. (N. Y.) 385; *Codington* v. *Janner,* 57 N. J. Eq. 528, 41 Atl. 874.) The acts and declarations of the testator may be proved by witnesses, to show that the will had not been revoked and the contents thereof. (*Reeves* v. *Booth,* 2 Mill. (S. C.) 334, 12 Am. Dec. 679; *Chisholm* v. *Ben,* 7 B. Mon. (Ky.) 408; *Durant* v. *Ashmore,* 2 Rich. (S. C.) 184; *Johnson's Will, supra; Sugden* v. *Lord St. Leonards, supra; Hatch* v. *Sigman,* 1 Dem. (N. Y.) 519; *Schnee* v. *Schnee,* 61 Kan. 643, 60 Pac. 738; *In re Camp's Estate, supra; Page* v. *Maxwell, supra; Foster's Appeal, supra; Behrens* v. *Behrens,* 47 Ohio St. 323; *Whitely* v. *King,* 17 C. B. (N. S.) 756; *Collagan* v. *Burns,* 57 Me. 449; *Lawyer* v. *Smith,* 8 Mich. 412; *Smock* v. *Smock,* 11 N. J. Eq. 157;

Redfield on Wills, Secs. 322, 323; 1 Underhill on Wills, Sec. 277; *In re Valentine's Will,* (Wis.) 67 N. W. 12; *In re Steinke's Will,* (Wis.) 40 N. W. 61, 62; *McDonald* v. *McDonald,* (Ind.) 41 N. E. 337, 344; *Pickens* v. *Davis,* 134 Mass. 252; *Betts* v. *Jackson,* 6 Wend. (N. Y.) 173, 188; *Beadles* v. *Alexander,* 9 J. Baxter, 604, 2 Am. Prob. Rep. 173.) When a subscribing witness forgets or is hostile, the fact may be proven by other witnesses. (1Underhill on Wills, Secs. 210-213; *Gillis* v. *Gillis,* 96 Ga. 1, 15, 23 S. W. 107; *Mays* v. *Mays,* (Mo.) 21 S. W. 921, 922; *Harp* v. *Parr,* (Ill.) 48 N. E. 113, 115; *Beadles* v. *Alexander, supra; Garrison* v. *Garrison,* 15 N. J. Eq. 266, 268, 270; *Jauncey* v. *Thorne,* 2 Barb. Ch. (N. Y.) 40.)

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

Appeal by one Frederick W. Scheuer from a judgment denying the probate of an alleged lost will, and from an order overruling his motion for a new trial.

In the beginning we are met with the objection on the part of respondents that there is no record before this court upon which it may determine the matters presented by this appeal. This objection is based upon certain alleged fatal irregularities occurring in the preparation and settlement of the statement on motion for a new trial, which are made to appear by a bill of exceptions. This bill of exceptions is not made a part of the statement on motion for a new trial, and under the rule laid down in *Beach* v. *Spokane Ranch & Water Co.,* 25 Mont. 367, 65 Pac. 106, we cannot consider it. (And see *State ex rel. Beach* v. *District Court,* 29 Mont. 265, 74 Pac. 498; *Sweeney* v. *Great Falls & Canada Ry. Co.,* 11 Mont. 34, 27 Pac. 347; *Arnold* v. *Sinclair,* 12 Mont. 248, 29 Pac. 1124.) We shall therefore pass on to the merits of the controversy.

Charles Colbert died on February 14, 1901, in a cabin in Butte. Among his neighbors he was known as a wealthy, but miserly, old bachelor, and it may be said incidentally that sev-

eral of these expected at his death to find themselves his beneficiaries. Shortly after his demise the clerk of the court received through the mails, or from an unknown source, an instrument purporting to be the last will and testament of Charles Colbert. The beneficiaries therein named were William I. Lippincott and John Woolbeater. In due time thereafter Woolbeater filed his petition asking that the will be admitted to probate. Thereupon the state of Montana, through the attorney general, filed a protest against the probate of this alleged will, on the ground that it was a forgery. The state alleged that Colbert died intestate, leaving no relatives, and that his estate should, under the law, escheat to it. Shortly after this a petition was filed by appellant, Frederick Scheuer, alleging that Colbert made a will in 1896, in which he had named Scheuer and one Lillian E. Burton, now Lillian E. Fluke, his beneficiaries. It was further alleged that this will was in existence at the time of Colbert's death, but had been destroyed or lost, and therefore could not be produced; that it was witnessed by two persons—John Woolbeater and one John Doe, whose true name and residence were unknown. Thereafter appellant filed an amended petition, asking that the lost will be admitted to probate, and in this petition stated that the subscribing witnesses to the will were John Woolbeater and one John Ackerman, both residents of Butte. Appellant and Lillian E. Fluke also filed objections to the will proposed by Woolbeater. The state of Montana likewise filed its objections against the so-called Scheuer or lost will, alleging that no such will had ever been made by decedent. Woolbeater did not file any objections to the so-called Scheuer will. Many pleadings were interposed by the contending parties, but the foregoing seems to be sufficient to illustrate their contentions.

In order to simplify the discussion, it will be well to ascertain first what are the essentials in proving a lost will. In every will case under our statute the rule of procedure is that the proponent of the will must first make out a *prima facie* case; that is to say, must make such proof as would entitle the will to

probate in the absence of a contest.    Then the contestant attacks
the validity of the will, the proponent defends the same, and
the contestant rebuts the testimony of the proponent.    Doubtless
the proponent may sur-rebut any new testimony adduced for
the first time in rebuttal (*Maloney* v. *King,* 30 Mont. 158, 76
Pac. 4), but the contestant has the right to open and close the
case (Sections 2340-2346, Code of Civil Procedure; *Farleigh*
v. *Kelley,* 28 Mont. 421, 72 Pac. 756, 63 L. R. A. 319).    This
disposes of one of appellant's principal assignments of error.

The following sections of the Code of Civil Procedure are
directly pertinent:

"Sec. 2370.    Whenever any will is lost or destroyed the dis-
trict court must take proof of the execution and validity there-
of, and establish the same; notice to all persons interested being
first given, as prescribed in regard to proofs of wills as in other
cases.    All the testimony given must be reduced to writing and
signed by the witnesses.

"Sec. 2371.    No will shall be proved as a lost or destroyed
will, unless the same is proved to have been in existence at the
time of the death of the testator, or is shown to have been fraud-
ulently destroyed in the lifetime of the testator, nor unless its
provsions are clearly and distinctly proved by at least two credi-
ble witnesses.

"Sec. 2372.    When a lost will is established, the provisions
thereof must be distinctly stated and certified by the judge,
under his hand and the seal of the court, and the certificate
must be filed and recorded as other wills are filed and recorded,
and letters testamentary or of administration, with the will
annexed, must be issued thereon in the same manner as upon
wills produced and duly proved.    The testimony must be re-
duced to writing, signed, certified and filed as in other cases,
and shall have the same effect as evidence as provided in Sec-
tion 2344."

At the trial the state and appellant jointly fought the Wool-
beater will, and in turn the state and Woolbeater fought the
Scheuer will.    After the evidence had been closed as to the

Woolbeater will, the appellant undertook to make out a *prima facie* case. It was incumbent upon him first to show affirmatively either that the will he proposed was in existence at the time of the death of Colbert, or that it was fraudulently destroyed during Colbert's lifetime. This he failed to do. He did prove *prima facie* some pertinent facts; for instance, he adduced evidence tending to prove that Colbert executed a will in the spring of 1896, wherein he and Lillian E. Burton were named as beneficiaries; that its contents were made known to at least three persons; that the will was seen about Christmas time in 1896, in August, 1899, about three weeks before Colbert's death, and on the day before his death. The witness who said he saw the will the day before Colbert died testified that he went to see Colbert upon important business, and conversed with him about it. Without proceeding further in detail, it is sufficient to say that the testimony of this witness, if true, shows beyond any question that at the time when the will was last seen it was in Colbert's possession, and Colbert was then in the exercise of his mental faculties. So far as the record discloses, it was never seen again. The better opinion is that under circumstances like the foregoing the presumption is that the testator, having possession of the will, and being mentally competent, himself destroyed the will *animo revocandi*. This being the case, the burden of proof was on the proponent appellant to overcome this presumption. (See note to *Clark* v. *Turner*, 38 L. R. A. 434, and cases cited.) And the proof required to overcome it must be clear, satisfactory and convincing.

An instructive case upon this subject is that of *In re Kennedy's Will*, 30 Misc. Rep. 1, 62 N. Y. Supp. 1011, in which the court said: "The law of this state is well settled that, where no testamentary papers have been found after a careful and exhaustive search, the presumption is that the decedent herself destroyed the will with the intention of revoking it. (*Collyer* v. *Collyer*, 110 N. Y. 481, 18 N. E. 110, 6 Am. St. Rep. 405; *Knapp* v. *Knapp*, 10 N. Y. 276; *Schultz* v. *Schultz*, 35 N. Y. 653, 91 Am. Dec. 88; *Hard* v. *Ashley*, 88 Hun. 103,

34 N. Y. Supp. 583; *In re Nichols*, 40 Hun. 387; *Betts* v. *Jackson*, 6 Wend. 173.) And even in England, where the courts are not controlled, as here, by any positive statutory provisions, the presumption is the same, as shown by the following cases: *Colvin* v. *Fraser*, 2 Hagg. Ecc. 266; 3 Phillim. Ecc. 126, 462, 552; 1 Swab. & Tr. 32; 32 Law J. Prob. 202; 36 Law J. Prob. 7; 7 El. & Bl. 886. The only cases where this presumption does not exist will be found to be where the will is clearly shown not to have been in the possession of the testator at the time of his death. (*In re Brechtee's Estate*, N. Y. Surr. Dec. 1893, p. 709; *Hammersley* v. *Lockman*, 2 Dem. Sur. 524; *Schultz* v. *Schultz*, 35 N. Y. 653, 91 Am. Dec. 88; *In re Marsh*, 45 Hun. 107.) 'Legal presumptions are founded upon the experience and observation of distinguished jurists as to what is usually found to be the fact resulting from any given circumstances; and, the result being thus ascertained, whenever such circumstances occur, they are *prima facie* evidence of the fact presumed.' (*Betts* v. *Jackson*, 6 Wend. 173.) In the last-named case the court says that it is a fact that for every will that is publicly destroyed five wills are secretly destroyed by the testator. The law will not speculate as to the motives which may have operated upon the testator's mind, either in the direction of intestacy or otherwise. The presumption that the decedent destroyed the will *animo revocandi* is so strong as to stand in the place of positive proof. The principle that a state of things once shown to exist will be presumed to continue, and that, therefore, the court should presume that, as in the case of a lost deed, the will remained in existence down to the death of the testator, does not apply to the case of a will. *Betts* v. *Jackson, supra*. Bearing in mind, then, this presumption of law, the will must be absolutely held by me to have been destroyed by the testatrix during her lifetime, unless positive and satisfactory proof to the contrary can be produced, sufficient to rebut and overcome that presumption."

This case was affirmed by the Supreme Court of New York by a decision which is found in 53 App. Div. 105, 65 N. Y.

Supp. 879, and was again affirmed by the Court of Appeals in a decision found in 167 N. Y. 163, 60 N. E. 443, in which the court says: "The burden of proof was upon the proponents, and, the execution of the instruments having been shown, it was claimed that the court should presume that they were in existence at the time of the death of the testatrix, unless the contrary was established. It is urged that in such cases the law presumes that a fact continuous in its character continues to exist until the contrary is proved, and that there is a presumption that an instrument shown to have been executed continues in existence. This rule, however, has no application to an ambulatory instrument like a will or codicil. Indeed, as to such an instrument the presumption is the other way. It appears that a careful search was made among the papers and effects of the deceased and neither the will nor the codicil could be found. No testamentary papers having been found after a careful and exhaustive search, the presumption arises that the decedent herself destroyed the will and codicil *animo revocandi*. (*Betts* v. *Jackson,* 6 Wend. 173; *Collyer* v. *Collyer,* 110 N. Y. 481, 18 N. E. 110, 6 Am. St. Rep. 405; *Schultz* v. *Schultz,* 35 N. Y. 653, 91 Am. Dec. 88; *Knapp* v. *Knapp,* 10 N. Y. 276; *Hard* v. *Ashley,* 88 Hun. 103, 34 N. Y. Supp. 583; *Matter of Nichols,* 40 Hun. 387.)"

There was no proof adduced that the will was fraudulently destroyed in the testator's lifetime. Appellant attempted to show that it was fraudulently destroyed after Colbert's death by Woolbeater and others, presumably for the purpose of showing that the will was in existence at the time of Colbert's death. Of course, such testimony would have been competent, but appellant failed to show anything of the kind. He alleged that Woolbeater was a witness to the lost will. Woolbeater denied this, and said he never saw Colbert sign a will at any time. Appellant produced witnesses who swore that Woolbeater, while attending the funeral, said he had the Scheuer or lost will in his pocket at the time. This Woolbeater denied *in toto*. Appellant apparently places much reliance upon the evidence of

those who testify to these statements, but obviously this testimony could have but one effect—to impeach Woolbeater, or establish the fact that he had at different times made contradictory statements.  It did not tend to prove even remotely that Woolbeater ever had possession of the so-called Scheuer will. It simply proved him unworthy of credit, and tended to show his statements, upon which appellant relied as establishing the existence of the will, to be unworthy of belief.  No one ever saw the will in Woolbeater's possession, so far as the testimony discloses.

Now, as we have heretofore seen, the statute is to the effect that the proponent of a lost will must prove either that the will was actually in existence at the time of the testator's death, or that it is in existence in contemplation of law.  If it was fraudulently destroyed in his lifetime, it is still so in existence.  If appellant cannot prove that the will was in existence, either actually or in contemplation of the law, at the time Colbert died, it follows that his case cannot stand.  In order to overcome the presumption of revocation which follows from the fact that the will was last seen in Colbert's possession when he was in possession of his mental faculties, appellant introduced certain declarations of Colbert's in conjunction with the testimony of witnesses who had seen the will, to the effect that Colbert said he was well satisfied with it.  As this question is one of first impression in this court, we deem it necessary to examine it at some length.  A respectable line of authorities holds that such declarations are competent as tending to show that, the will being in existence, and the testator being satisfied with it, it is not likely that he destroyed it; in other words, that he would be likely to follow out the inclinations which he had always expressed with respect to it.  Nothing can be founded upon a more insecure basis.  The will is, according to law, of an ambulatory character.  No one except the testator has any rights in it whatsoever.  No other person can have any rights in it until the testator is dead.  He may change it at pleasure, and human experience has shown that wills are almost always destroyed secretly.

It seems to us that the better line of authorities is to the effect that such declarations are not admissible at all unless they are a part of the *res gestae,* and are introduced simply to show the mental condition of the testator when he did the thing which is being inquired into; that is, either when he executed the will or when he destroyed it. If any other rule is followed, it may result in this: A testator makes a will in the presence of witnesses. It is executed with all the formalities of law. These witnesses remember its contents. Other witnesses see it. The testator has expressed himself at various times as being satisfied with it. Then he secretly destroys it. In order that such will be admitted to probate after the death of the testator, it would only be necessary to have these different witnesses testify to the facts touching its execution, etc., and thus the intention of the testator as to the disposal of his property would be thwarted. It would impose upon a testator the necessity of revoking his will with as much publicity as that with which he created it, and the clause of the statute which provides that a testator may revoke his will by destroying it might be made nugatory in a given instance.

In the case of *Throckmorton* v. *Holt,* 180 U. S. 552, 21 Sup. Ct. 474, 45 L. Ed. 663, the court, speaking through Mr. Justice Peckham, says: "After much reflection upon the subject, we are inclined to the opinion that not only is the weight of authority with the cases which exclude the evidence both before and after the execution, but the principles upon which our law of evidence is founded necessitate that exclusion. The declarations are purely hearsay, being merely unsworn declarations, and, when no part of the *res gestae,* are not within any of the recognized exceptions admitting evidence of that kind. Although in some of the cases the remark is made that declarations are admissible which tend to show the state of the affections of the deceased as a mental *condition,* yet they are generally stated in cases where the mental *capacity* of the deceased is the subject of the inquiry, and in those cases his declarations on that subject are just as likely to aid in answering the question as to

mental capacity as those upon any other subject. But if the matter in issue be not the mental capacity of the deceased, then such unsworn declarations, as indicative of the state of his affections, are no more admissible than would be his unsworn declarations as to any other fact.

"When they are not a part of the *res gestae,* declarations of this nature are excluded, because they are unsworn, being hearsay only, and where they are claimed to be admissible on the ground that they are said to indicate the condition of mind of deceased with regard to his affections, they are still unsworn declarations, and they cannot be admitted if other unsworn declarations are excluded. In other words, there is no ground for an exception in favor of the admissibility of declarations of a deceased person as to the state of his affections, when the mental or testamentary capacity of the deceased is not in issue. * * * The law cannot, therefore, be regarded as settled in England that, even in the case of a lost will, declarations of the testator made after its execution are to be admitted as evidence of its contents. It is also proper to call attention to the fact that all the judges participating in the decision of *Sugden's Case* were entirely satisfied with the proof of the contents of the lost will, wholly aside from evidence of these declarations. While the case is not like the one before us, inasmuch as the inquiry here is not in regard to the contents of a lost will, yet it might, perhaps, be urged with some force that, if declarations of that kind were admissible, the evidence now before us is competent, and was properly admitted. We are, however, convinced that the true rule excludes evidence of the kind we are considering. We remain of the opinion that the declarations come within no exception to the law excluding hearsay evidence upon the trial of an action, and we think the exceptions should not be enlarged to admit the evidence. Where the issue is not one in regard to the mental capacity of the alleged testator to make a will, his declarations upon the subject cannot be said to be declarations made against interest, such as declarations made by an individual while in possession of property, in disparagement of his

absolute ownership. Such evidence has been admitted as declarations against interest, or as characterizing possession, but the same declarations, made after a conveyance of the land, would be inadmissible as mere hearsay, and in no degree as declarations against interest. Declarations made by an alleged testator before or after the date of the paper are not declarations against interest, because they can have no effect upon his interest. The will would not take effect until after his death, and before that time he could revoke it or make another, and it would still be immaterial evidence even if he did neither. * * *

"No inference is generally more uncertain or unreliable than that which is sought to be drawn upon the question of the genuineness of a will from the alleged condition of a testator's mind towards relatives or others, as evidenced by his declarations. It is everyday experience that declarations of that nature are to the last degree unreliable as a basis for an inference as to probable testamentary disposition of property. Those who thought by reason of such declarations that they would certainly be remembered in the will of the testator are so frequently disappointed * * * that it would seem exceedingly unsafe to permit a jury to draw an inference based upon such evidence, relative to the genuine character of the instrument propounded as a will."

Justice O'Brien, delivering the opinion, commenting on this case in *Re Kennedy's Will, supra,* said: "As I read that case, it is a decision of the highest court in the land that the declarations of the deceased, when not a part of the *res gestae,* are not admissible to prove the execution of a will or its revocation, or rebutting the presumption of revocation from the fact that no will is found after death."

And in the case of *In re Calkins,* 112 Cal. 296, 44 Pac. 577, the court said: "The respondent does not claim that there is any direct evidence in support of the verdict outside of the evidence of certain declarations of the testatrix. The evidence chiefly relied upon by him consists of certain declarations made by her, which were admitted in evidence over the objection of

the proponent. To the extent that these declarations at or prior to the making of the will afforded any evidence bearing upon the state of the testatrix's mind at the time of the execution of the will—her mental capacity, the condition of her mind toward the object of her bounty, as well as toward the persons by whom she was surrounded, and the correspondence of her acts with the feelings and purposes entertained by her at the time she executed the will—they were properly admitted, and were entitled to consideration by the jury; but to the extent that they purported to be declarations of the acts of others, or of her own acts, they were but matters of hearsay merely, whose truth rested in the veracity of the utterer, and upon which there was no opportunity of cross-examination or of explanation by the party who had uttered them, and were not entitled to any weight by the jury, and cannot be considered for the purpose of sustaining their verdict. (*Shailer* v. *Bumstead,* 99 Mass. 112; *Potter* v. *Baldwin,* 133 Mass. 427; *Bush* v. *Bush,* 87 Mo. 480; *Jones* v. *Roberts,* 37 Mo. App. 163; *Waterman* v. *Whitney,* 11 N. Y. 157, 62 Am. Dec. 71; *Marx* v. *McGlynn,* 88 N. Y. 357; *Matter of Palmateer,* 78 Hun. 43, 28 N. Y. Supp. 1062; *Griffith* v. *Diffenderffer,* 50 Md. 466.)" (*Wells* v. *Wells,* 144 Mo. 198, 45 S. W. 1095.)

It thus appears that appellant's case, upon this phase of it, was wholly insufficient to overcome the presumption of revocation.

One of the grounds stated by appellant in the notice of intention to move for a new trial was that of newly discovered evidence, which could not with reasonable diligence have been discovered and produced at the trial. In support of this ground he filed the affidavit of one John Kempfer, who stated, in substance, that he was a resident of Butte, and was acquainted with Charles Colbert for several years prior to his death; that Colbert had shown him a will, signed by Colbert as testator and by John Woolbeater and William Ackerman as witnesses, in which Frederick Scheuer and Lillian E. Burton were the beneficiaries; that affiant was familiar with its contents, substantially; that

prior to the time of the death of Colbert affiant went from Butte to East Helena, where he remained until about the 8th of March, 1901, which was subsequent to the death of Colbert; that upon his return to Butte he occupied a house on the Emory placer claim, the property of Colbert, near a cabin occupied at that time by Woolbeater; that shortly after his return from East Helena, and after the date of his occupation of the house on the Emory placer, Woolbeater called upon him, and in a conversation concerning the death of Colbert he asked Woolbeater what had become of the will made by Colbert during the year 1896, in which Frederick Scheuer and Lillie Burton were named as beneficiaries, and that thereupon Woolbeater withdrew the will from his pocket, and showed it to affiant, who thereupon read it over, and saw that it was the same paper which had been shown to him by Colbert; that it was in the same condition as when last shown to him by Colbert, and bore the genuine signature of Charles Colbert as testator and the names of John Woolbeater and William Ackerman as witnesses; that the said paper was dated in the year 1896, written with a pen and ink upon ordinary legal cap paper, and was the same paper that had been previously shown to him. He further deposed that he had never mentioned the matters contained in his affidavit to any one until after the trial of this action, and said that the paper was in existence at least three weeks or a month subsequent to the death of Colbert, being in the possession of Woolbeater, intact, at that time.

In support of this affidavit appellant filed an affidavit in which he deposed that he had discovered the evidence stated in the affidavit of Kempfer since the trial; that he was unable to discover it prior to the trial, "although he had inquired of different persons living in the vicinity, and of every person who he thought had any knowledge of the facts or circumstances concerning the death of Colbert, as to whether the said will offered by him for probate was in existence at and subsequent to the date of Colbert's death, but that he was unable to discover any other evidence than that which was offered upon the trial."

The affidavit shows that appellant has been diligent in procuring evidence—in fact, has done all in his power to procure it; that the new evidence offered was upon a material matter; that it was not cumulative, and not of an impeaching nature. Indeed, it was the very essential evidence which the appellant lacked at the trial, and by reason of the absence of which he was unable to proceed with his proof. In appellant's affidavit he also averred that he could produce the said Kempfer as a witness upon the trial, and that Kempfer would testify to the facts alleged in his affidavit. We cannot say that the new evidence will not probably change the result if a new trial is granted. The witness Lillian Fluke, nee Lillian Burton, made an affidavit to the same effect as that of appellant. The state made no attempt to contradict these affidavits in any way. They stand admitted in the record, and import verity. With this uncontradicted showing upon a matter of the utmost materiality, we think the court abused its discretion in not granting the motion for a new trial.

Many other errors are assigned by appellant, but, in view of what has been said in the foregoing, we do not think it necessary to discuss them.

For the reasons given, we think the judgment and order should be reversed, and the cause remanded for a new trial.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause is remanded.

*Reversed and remanded.*

Rehearing granted January 23, 1905.

## ON REHEARING.

(Submitted March 14, 1905.   Decided March 31, 1905.)

New Trial—Newly Discovered Evidence—Affidavits—Insufficiency.
   1.   The affidavit of proponent in support of a motion for a new trial on the ground of newly discovered evidence, in proceedings to establish a lost will, averred that since the dismissal of his petition he had discovered a witness

who would testify that he was shown the will by testator, and that he saw it after his death; that proponent was unable to discover the evidence prior to the trial, although he had inquired of different persons living in the vicinity, and every person whom he thought had any knowledge of the circumstances. The affidavit of the witness in question showed that prior to the death of testator he left the vicinity, but returned after testator's death and occupied a house on testator's property. It did not appear how the evidence was discovered, or that the witness had not lived in the vicinity from a few weeks after testator's death to the time of the trial. *Held,* that there was not a sufficient showing of diligence on the part of the movant to entitle him to a new trial.

New Trial—Newly Discovered Evidence—Presumption—Negligence.

2. Every presumption that he could have secured the testimony for the former trial will be indulged against the movant for a new trial on the ground of newly discovered evidence; hence he must negative any negligence on his part.

New Trial—Newly Discovered Evidence—Affidavit—Particularity.

3. Affidavits filed in support of a motion for a new trial on the ground of newly discovered evidence should state with particularity what was done toward obtaining the new evidence, and how and when it was discovered, so as to give the adverse party an opportunity to traverse the statements made in the affidavit.

New Trial—Newly Discovered Evidence—Affidavit—Insufficiency.

4. A statement in an affidavit filed in support of a motion for a new trial on the ground of newly discovered evidence, that the movant has made inquiry of every person he thought might know anything about the case, is insufficient.

New Trial—Newly Discovered Evidence—Duty of Trial Court.

5. It is incumbent upon the trial court, on the hearing of a motion for a new trial on the ground of newly discovered evidence, to take into consideration the weight and importance of the new evidence, its bearing in connection with the evidence on the former trial, and even the credibility of the witnesses.

New Trial—Newly Discovered Evidence—Cumulative—Different Result on Re-Trial.

6. A motion for a new trial on the ground of newly discovered evidence will not be granted, unless it clearly appears that such evidence is not cumulative merely, but makes it clearly probable that it will produce a different result on re-trial.

New Trial—Newly Discovered Evidence—Trial Court—Presumptions.

7. The trial court, having heard the testimony given by the witnesses *ore tenus* and observed their conduct and demeanor on the witness stand, is in a better position to weigh it than is the appellate court, and the presumption will be indulged, in the absence of any showing to the contrary, that its action in passing upon a motion for a new trial on the ground of newly discovered evidence, was based upon a due consideration of these conditions.

New Trial—Newly Discovered Evidence—Trial Court—Discretion.

8. Applications for new trials on the ground of newly discovered evidence are addressed to the sound, legal discretion of the trial judge, and his action thereon will not be disturbed on appeal, except for a clear and unmistakable abuse of such discretion.

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Upon the original hearing of this case the court decided that the affidavits of newly discovered evidence were of such charac-

ter as to warrant the granting to appellant of a new trial in the court below. The court, upon motion, granted a rehearing upon this point alone. Upon the rehearing, counsel for the state take the position that these affidavits are insufficient to entitle appellant to a new trial. It is but fair to the court, and to the commissioner who prepared the former opinion, to say that the attorneys for the state on the former argument treated the question of the sufficiency of these affidavits very briefly. Had they then made as full a presentation of this question as they do now, the result would have been different. The record on appeal is very voluminous, and we were not aided in its examination upon this point by such references thereto as are now presented. For this reason the record was misapprehended in some respects, and some of the language of the opinion was not sufficiently guarded.

The affidavit of John Kempfer is as follows: "John Kempfer, being first duly sworn, on oath deposes and says that he is a resident of Butte City, Silver Bow county, Montana, and that he was acquainted with Charles Colbert for several years prior to his death; that, on several occasions prior to the death of said decedent, said decedent had spoken to him about a certain will which he, the said decedent, had executed during the year 1896, in which said will Frederick W. Scheuer and Lillian E. Burton, now Lillian E. Fluke, were the sole beneficiaries, and that the said will was signed by the said Charles Colbert and by John Woolbeater and William Ackerman as witnesses; that the said decedent, Colbert, had conversed with this affiant on several occasions concerning the said will during his lifetime, and had shown the same to him; and that this affiant was familiar with its contents, substantially, by reason of the fact of the said Colbert's having shown the same to him, and having seen the same, together with the names of the persons attached thereto as witnesses, in addition to the name of the said Charles Colbert. Affiant further says that, some time prior to the death of the said Charles Colbert, he left the city of Butte, Montana, and removed to East Helena, in Lewis and Clarke county, in said

state, and remained there until about the 8th day of March, A. D. 1901, which was subsequent to the date of said Charles Colbert's death; that upon his return he occupied a house on a portion of the Emory placer claim, the property of the said Charles Colbert, near a certain house or cabin occupied at that time by John Woolbeater, the proponent of the so-called Woolbeater-Lippincott will in this cause; that a short time after his return from East Helena, and after the date of his occupation of said house on the said Emory placer claim, the said John Woolbeater called on him, and, in a conversation concerning the death of Charles Colbert, which had previously occurred, this affiant asked the said Woolbeater, in substance, what had become of the will made by Colbert during the year 1896, in which the said Frederick W. Scheuer, or Freddie Scheuer, and Lillian E. Burton, or Lillie Burton, were named as beneficiaries, and that thereupon the said Woolbeater withdrew the said will from his pocket and showed it to this affiant, who thereupon looked at it, read it over, and saw that it was the same paper which had been shown to him by the said Colbert during his lifetime, and was in the same condition as when last shown to him by the said Charles Colbert previous to his death, said paper bearing the genuine signature of Charles Colbert as testator, and the names of John Woolbeater and William Ackerman as witnesses. Affiant further says that the said paper was dated in the year 1896, and was signed as hereinbefore stated, and was written with a pen and ink upon ordinary legal-cap paper, and was the same paper that had been previously shown to him. Affiant further says that he never mentioned said matters to any one until after the trial of the above action. Affiant further says that the said paper was in existence, as hereinabove stated, at least three weeks or a month subsequent to the date of Charles Colbert's death, and was in the possession of said John Woolbeater, intact, at that time."

The affidavit of Frederick W. Scheuer is as follows: "Frederick W. Scheuer, being first duly sworn, deposes and says that he is one of the contestants of the so-called Woolbeater-Lippin-

cott will, offered for probate in the above-entitled action, and that he is the proponent of the so-called Scheuer-Fluke will, which was offered for probate as a lost will in the said cause; that since the date of the said trial, and the dismissal of his petition to have the said lost will probated, he has discovered evidence as to the existence of said will subsequent to the death of said Charles Colbert, deceased, which said evidence he was unable to discover prior to the time of said trial, and the dismissal of his petition and contest, although he had inquired of different persons living in the vicinity, and every person whom he thought had any knowledge of the facts or circumstances surrounding the death of said Charles Colbert, and as to whether or not the said will offered by him for probate was in existence at and subsequent to the date of his said death; that he was unable to discover any other evidence than that which was offered upon the trial. Affiant further says that since the date of said trial he has discovered that John Kempfer, an acquaintance of said Charles Colbert, deceased, and also of said John Woolbeater, saw the will offered by this affiant for probate in the possession of said John Woolbeater about three weeks or a month subsequent to the date of said Colbert's death; that the said Woolbeater showed the said will to the said Kempfer, and that the said Kempfer recognized the same as being the will which had been shown to him by Charles Colbert during his lifetime; and that the said Kempfer had read the said will previous to the death of said Charles Colbert, and had seen the signatures attached thereto, and was familiar with the contents thereof, as this affiant is informed and believes. Affiant further says that the said Kempfer never told him, or any one representing him, prior to the date of said trial, or prior to the date of the dismissal of affiant's petition to have the said lost will probated, that he had any knowledge concerning the execution, existence or possession of said will by Woolbeater subsequent to Colbert's death, and that therefore he could not produce the said witness upon the trial of said cause, or produce his evidence. Affiant further says that he herewith presents, as part of his

motion for a new trial, the affidavit of the said John Kempfer, showing the facts that he is familiar with concerning the execution of said will by the said Charles Colbert during his lifetime, and showing the conversation had by Kempfer with Colbert concerning the same, and showing the existence of the said will subsequent to Colbert's death, the same being in the possession of John Woolbeater subsequent to said time. Affiant further says that, if a new trial is granted in this cause, he can produce the said John Kempfer as a witness upon the trial hereof, and produce evidence showing the facts stated in the affidavit of said John Kempfer, herewith filed, and referred to in support of affiant's motion for a new trial, and that he can also show by the said witness that the said will was in existence subsequent to the date of the death of Charles Colbert. Wherefore affiant asks that a new trial be granted in this cause."

The affidavit of Mrs. Fluke was identical with the affidavit of Scheuer, above quoted, and need not herein be set forth.

Before considering the affidavit of Kempfer, it is necessary to ascertain whether, by the affidavits of appellants, reasonable diligence is shown on their part to discover before the former trial the testimony which they say Kempfer will now give. A careful consideration of the contents of these affidavits, and the adjudications of our own and various courts of last resort, leads us irresistibly to the conclusion that they do not disclose the exercise of such diligence as is contemplated by Section 1171 of the Code of Civil Procedure. We lately had occasion to investigate the question of reasonable diligence in a case of similar character, and, after citing numerous authorities, we announced the following rule: "Under these authorities, it was incumbent upon plaintiffs to show that they had been guilty of no laches, and that failure to produce the evidence on the trial could not be imputable to lack of diligence on their part. They must make strict proof of diligence, and a general averment of its existence is insufficient. Whether reasonable diligence has been used is a question to be determined by the court upon the affidavits presented, and therefore these affidavits should state with particu-

larity what acts were performed. They should show what diligence was used, how the new evidence was discovered, why it was not discovered before the trial, and such other facts as make it clear that the failure to produce the evidence was not their own fault, or because of want of diligence on their part." (*Nicholson* v. *Metcalf,* 31 Mont. 276, 78 Pac. 483.)

The movant for a new trial on the ground of newly discovered evidence must set forth such facts as will enable the court to determine whether reasonable diligence was exercised. Every presumption that he could have secured the testimony for the former trial will be indulged against him. He must therefore negative any negligence. The question being one for the court, as to whether reasonable diligence was exercised, and this question having to be determined upon the affidavits filed, great care should be exercised in their preparation. They should set forth such facts as will enable the court to determine whether reasonable diligence was exercised. They should state in detail and with particularity what was done by the parties with reference to obtaining the new evidence, how and when it was discovered, etc., and thus give the adverse party the opportunity to traverse the statements if desirable. The reason of this rule is well stated in *Baker* v. *Joseph,* 16 Cal. 173: "The temptations are so strong to make a favorable showing, after a defeat in an angry and bitter controversy involving considerable interests, and the circumstance that testimony has just been discovered, when it is too late to introduce it, so suspicious, that courts require the very strictest showing to be made of diligence and all other facts necessary to give effect to the claim."

The affidavit of Scheuer discloses that since the former trial "he has discovered evidence as to the existence of said will subsequent to the death of said Charles Colbert, deceased, which said evidence he was unable to discover prior to the time of said trial, * * * although he had inquired of diffeernt persons living in the vicinity, and every person whom he thought had any knowledge of the facts or circumstances surrounding the death of said Charles Colbert, and as to whether or not the said

will offered by him for probate was in existence at and subse-
quent to the date of his said death; that he was unable to dis-
cover any other evidence than that which was offered upon the
trial." This affidavit further discloses "that the said Kempfer
never told him, or any one representing him, prior to the date
of said trial, or prior to the date of the dismissal of affiant's
petition to have the said lost will probated, that he had any
knowledge concerning the execution, existence or·possession of
said will by Woolbeater subsequent to Colbert's death, and that
therefore he could not produce the said witness upon the trial
of said cause, or produce his evidence." As above stated, the
affidavit of Mrs. Fluke is identical with that of Scheuer. This
is the only showing of exercise of reasonable diligence that is
found in the affidavits.

It is well settled that a statement in an affidavit that the party
has made inquiry of every person he thought might know any-
thing about the case is insufficient. (*Smith* v. *Williams,* 11
Kan. 104; *Patterson* v. *Collier,* 77 Ga. 292, 3 S. E. 119; *Toney*
v. *Toney,* 73 Ind. 34; *Flersheim M. Co.* v. *Gillespie,* 14 Okl.
143, 77 Pac. 183; *Keisling* v. *Readle,* 1 Ind. App 240, 27 N. E.
583; *Richter* v. *Meyers,* 5 Ind. App. 33, 31 N. E. 582; *Hines*
v. *Driver,* 100 Ind. 315.) The opinion in the last case cited is
very exhaustive and very able, and we refer to it for a full dis-
cussion of the point under consideration.

It will be noticed that there is no showing that Kempfer did
not live in the immediate vicinity of the residence of Colbert
for a time commencing a few weeks after his death up to the
trial of the case. He states in his affidavit that he returned to
Butte about the 8th day of March, 1901, and resided on the
property formerly owned by Mr. Colbert. Appellants show no
excuse for not inquiring of him what he knew in regard to the
matter, if anything, or that they were not aware of his residence
in the vicinity. To use the language of the Supreme Court of
Indiana: "For all we know, from his affidavit, the two persons
whose affidavits he produces may have been his nearest neigh-
bors and his intimate friends, with whom he had frequently had

consultations about the case." (*Graham* v. *Payne,* 122 Ind. 403, 24 N. E. 216.) It is not shown how soon after the trial, or by what means, this evidence was discovered. It may have been discovered by the diligence of appellants or their attorneys, spurred on by defeat, soon after the trial. If this is true, they might possibly have discovered it before the trial, by the exercise of the same diligence. · (*Kansas City M. & B. R. Co.* v. *Phillips,* 98 Ala. 159, 13 South. 65.)

The facts set forth in the affidavit of Kempfer are contradicted in some respects by the testimony given at the trial. When the motion for a new trial was presented to the court below, there was before that court for consideration all the evidence given on the trial of the case, and in this evidence we find the contradictions above referred to. Therefore the language used in the former opinion that these affidavits are uncontradicted and import verity is not sustained by the record.

It was the duty of the trial court, on the hearing of the motion for a new trial, "to take into consideration the weight and importance of the new evidence, its bearing in connection with the evidence on the former trial, and even the credibility of the witnesses." (*State* v. *Stain,* 82 Me. 472, 20 Atl. 72; *Leyson* v. *Davis,* 17 Mont. 220, 293, 42 Pac. 775, 31 L. R. A. 429.) But again, a motion for a new trial should not be granted on newly discovered evidence unless such evidence makes it clearly probable that it will produce a different result on the retrial. (*State* v. *Hardee,* 28 Mont. 18, 72 Pac. 39.) While this rule was doubtless in the mind of the writer of the opinion upon the former hearing of this case, it is not stated with exactness, but in language which might mislead.

In *Commonwealth* v. *Flanagan,* 7 Watts & S. 415, the Supreme Court of Pennsylvania say: "After verdict, when the motion for a new trial is considered, the court must judge, not only of the competency, but of the effect of evidence. If, with the newly discovered evidence before them, the jury ought not to come to the same conclusion, then a new trial may be granted; otherwise they are bound to refuse the application. And in

*Lewellen* v. *Parker* [4 Ohio, 5] it is ruled that in considering the motion, the court will not inquire whether, taking the newly discovered testimony in connection with that exhibited on the trial, a jury *might* be induced to give a different verdict; but whether the legitimate effect of such evidence would *require* a different verdict. The question, therefore, is (supposing all the testimony, new and old, before another jury) not whether they *might,* but whether they ought to, give another verdict." This language is quoted with approval by the Supreme Court of Maine in *State* v. *Stain, supra,* and a long list of authorities is cited, supporting the doctrine. While the rule thus stated is more stringent than the one we have adopted, the quotation has been given to show the position of other courts.

The court below heard the testimony given on the trial from the mouths of the witnesses, observed their conduct and demeanor on the witness stand, and had better means of weighing the testimony than this court possesses. It is to be presumed, in the absence of any showing to the contrary, that the court below considered all these conditions in passing upon the motion for a new trial.

One singular circumstance referred to in the affidavit of Kempfer deserves attention in this connection. He states that one Woolbeater showed him the Colbert will, made in favor of appellants, after March 8, 1901, and subsequent to Colbert's death. The record discloses that prior to this time, and on February 21, 1901, Woolbeater had filed a will for probate purporting to have been executed by Colbert in his own and Lippincott's favor, and the petition for such probate had not been heard. This statement strikes us as being so unreasonable that it is not worthy of belief, and we are inclined to think that, in all probability, a jury, in passing upon its truth, would be impressed in the same manner. We cannot say, from an examination of the record, that a different result would have been clearly probable, had the new trial been granted.

Applications for new trial on the ground of newly discovered evidence are addressed to the sound legal discretion of the trial

judge, and his action thereon will not be disturbed on appeal, except for a clear and unmistakable abuse of such discretion. This court, in *State* v. *Brooks,* 23 Mont. 146, 161, 57 Pac. 1038, 1043, quotes with approval the following language from *People* v. *Demasters,* 109 Cal. 607, 42 Pac. 236 : "We can see no abuse of discretion on the part of the court below in denying defendant's motion for a new trial, made upon the ground of newly discovered evidence. As has been repeatedly held by this court, a motion for a new trial is addressed to the sound legal discretion of the trial court, and the action of the latter will not be disturbed, except in an instance manifesting a clear and unmistakable abuse of such discretion. This rule is peculiarly applicable to an application based upon the ground of newly discovered evidence, which not only involves an enlarged discretion in the trial court, but has never been looked upon with favor, but rather with distrust. (*Hobler* v. *Cole,* 49 Cal. 250; *Arnold* v. *Skaggs,* 35 Cal. 684.) To entitle the plaintiff to a new trial on this ground, it must appear, among other things, that the new evidence be not cumulative, merely; that it be such as to render a different verdict reasonably probable upon a retrial; and that the evidence could not with reasonable diligence have been discovered and produced at the trial. 1 Hayne on New Trial and Appeals, Sec. 88." (See, also, *Murray* v. *Heinze,* 17 Mont. 353, 358, 359, 42 Pac. 1057, 43 Pac. 714.)

We are therefore of the opinion that the judgment and order appealed from be affirmed, and so advise.

PER CURIAM.—For the reasons stated in the foregoing opinion, the judgment and order are affirmed.

*Affirmed.*